## O'MOY SHAW *v.* DERON D. FREEMAN
## (AC 31658)

Robinson, Bishop and Schaller, Js.

Argued November 17, 2011—officially released March 6, 2012

*Richard H. Kosinski*, for the appellant (plaintiff).

*Peter T. Fay*, with whom was *Sandy T. Roussas*, for the appellee (defendant).

*Opinion*

BISHOP, J. The plaintiff, O'Moy Shaw, appeals from the summary judgment rendered by the trial court in favor of the defendant, Deron D. Freeman. On appeal, the plaintiff claims that the court improperly (1) rendered summary judgment when genuine issues of material fact exist and (2) sustained the defendant's objections to her discovery requests. We agree in part with the first claim and, therefore, reverse in part the judgment of the trial court.

The following facts and procedural history are relevant to our discussion of the issues on appeal. The plaintiff retained the defendant to represent her interests in connection with her purchase of property located at 49-51 Edgewood Street in Hartford (property). In the performance of his representation of the plaintiff, the defendant in turn, retained the Ticor Title Insurance Company (Ticor) to perform a title search on the property. Ticor thereafter issued a title insurance

certificate with respect to the property, dated July 5, 2006, which contained notice of the encumbrances at issue in this case. On July 14, 2006, the plaintiff purchased the property from Philip Case Weatherspoon Financial Group, LLC for the sum of $60,000.

After purchasing the property, the plaintiff discovered that it was subject to prior encumbrances, including (1) a January 23, 1992 notice of violation by the city of Hartford and (2) a June 5, 2006 notice of emergency repair, also filed by the city of Hartford. In connection with those encumbrances, and after closing on the property, the plaintiff was billed $72,400 by the city of Hartford for demolition costs regarding a structure on the property, $4846 for asbestos sampling services and $950 for engineering fees. On the basis of the prior notification of violations, the building on the property was demolished by the city of Hartford on or about November 1, 2006. Thereafter, in October, 2007, the plaintiff commenced the present professional malpractice action, essentially claiming that, due to the defendant's failure to adequately and competently represent her in conjunction with the purchase of this property, she received property burdened with numerous encumbrances which, in turn, negatively impacted its value and marketability.

On January 31, 2008, the plaintiff filed an amended complaint which contains four counts sounding respectively in: (1) negligence, (2) recklessness, (3) emotional distress based on negligence and (4) emotional distress based on recklessness.[1] On March 17, 2008, the defendant filed his answer and special defenses, claiming

---

[1] The plaintiff claims the following damages are the consequence of the defendant's conduct: (1) the property she purchased was worth substantially less than the $60,000 purchase price, (2) she was obliged to pay the city of Hartford for demolition and related costs which a reasonable review of the title search would have prevented, (3) she is obliged to pay the principal and interest on a loan she undertook in order to finance the purchase of the property and (4) she suffered emotional distress as a consequence of the defendant's failures.

that the plaintiff failed to have the property inspected, failed to take reasonable action to mitigate her damages, knowing it was a distressed property, and failed to perform her own due diligence in connection with her purchase of the property.

While this matter was pending in the trial court, the plaintiff filed a set of interrogatories and a request for production to which the defendant filed certain objections on April 7, 2008. On June 25, 2008, the court sustained twenty-one of the defendant's twenty-nine objections.[2] That court action is also a subject of this appeal.

On August 1, 2008, the defendant filed a Chapter 7 bankruptcy petition in the United States Bankruptcy Court for the District of Connecticut.[3] On October 3, 2008, the plaintiff filed a pleading in the Bankruptcy Court, captioned "motion for relief from stay re: insurance policy." On October 23, 2008, the Bankruptcy Court entered an order modifying the automatic stay, permitting the plaintiff to continue and to prosecute to conclusion the present action against the defendant, but with express, specific limitations as to any recovery that the plaintiff could obtain. By the terms of the Bankruptcy Court's order, the plaintiff could proceed with the state court action "but only to establish the [defendant's] liability as a prerequisite to seeking a monetary

[2] On November 30, 2009, the plaintiff filed a motion for articulation of the court's rulings on the defendant's objections to discovery requests, which the court denied on April 1, 2010. Thereafter, on June 16, 2010, this court, upon the plaintiff's motion for review, ordered the trial court to articulate the rationale for its objection ruling. The trial court issued its articulation on October 20, 2010.

[3] The filing of a bankruptcy petition with the Bankruptcy Court operates as a stay, applicable to all actions or proceedings against the debtor. 11 U.S.C. § 362 (a). The Bankruptcy Court, however, has the power to grant relief from the automatic stay. 11 U.S.C. § 362 (d) through (g). See also *Stec* v. *Raymark Industries, Inc.*, 114 Conn. App. 81, 85 n.3, 968 A.2d 960 (2009), rev'd on other grounds, 299 Conn. 346, 10 A.3d 1 (2010).

recovery from the [defendant's] insurance carrier, with actual recovery limited to the extent of applicable insurance coverage . . . ." On November 12, 2008, the Bankruptcy Court issued an order of discharge pursuant to 11 U.S.C. § 727.[4]

On March 23, 2009, the defendant filed a motion for summary judgment in which he claimed that, at the time of the alleged professional negligence, he had in place an insurance policy with limitations and exclusions barring the plaintiff's recovery. Following receipt of the parties' memoranda in support of and in opposition to the motion for summary judgment, the court, on October 13, 2009, granted summary judgment on all four counts of the plaintiff's complaint.[5] This appeal followed. Additional facts will be set forth as necessary.

I

On appeal, the plaintiff first claims that the court improperly granted summary judgment as to each of the four counts of her complaint. We agree with the plaintiff's claim with respect to the first count and disagree as to the remaining counts.

---

[4] The Bankruptcy Court order, dated November 12, 2006, reads as follows:
"DISCHARGE OF DEBTOR
"It appearing that the debtor [Deron D. Freeman] is entitled to a discharge.
"IT IS ORDERED:
"The debtor is granted a discharge under section 727 of title 11, United States Code, (the Bankruptcy Code)."

[5] We note the unusual procedural posture of this case due to the overlapping bankruptcy proceeding. While it is not readily apparent from the pleadings whether the defendant is insured for the losses claimed by the plaintiff, and thus presents an issue of material fact, neither party has made the claim that insurance was not a proper subject for the court's consideration in ruling on the motion for summary judgment. Indeed, the plaintiff responded to the motion for summary judgment on the apparent basis that the presence or absence of insurance coverage was a material fact integral to her claims. Since both parties and the court treated the issue of insurance coverage in this manner and neither party now claims that the court ruled on a question that is not material to the plaintiff's claims, we will review the appeal as it has been framed and presented by the parties and decided by the trial court.

We first set forth the applicable standard of review of a trial court's ruling on a motion for summary judgment. "Summary judgment shall be rendered forthwith if the pleadings, affidavits and other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . The scope of our appellate review depends upon the proper characterization of the rulings made by the trial court. . . . When . . . the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record." (Internal quotation marks omitted.) *Liberty Mutual Ins. Co.* v. *Lone Star Industries, Inc.*, 290 Conn. 767, 786–87, 967 A.2d 1 (2009).

As ordered by the Bankruptcy Court, any potential recovery that would be available to the plaintiff is limited "to the extent of applicable insurance coverage." As a result, and based on the manner in which the parties presented, and the court decided, their dispute, our analysis rests on a determination of whether there is applicable insurance coverage available to the plaintiff under the defendant's lawyers professional liability policy for the claims set forth in the plaintiff's complaint. This assessment, in turn, requires an examination of the language of the insurance contract at issue. In examining the language of insurance policies, our standard of review is well settled. "[C]onstruction of a contract of insurance presents a question of law for the court which this court reviews de novo." (Internal quotation marks omitted.) *Connecticut Medical Ins. Co.* v. *Kulikowski*, 286 Conn. 1, 5, 942 A.2d 334 (2008). The "rule of construction favorable to the insured extends to exclusion clauses." (Internal quotation marks omitted.) *Liberty Mutual Ins. Co.* v. *Lone Star Industries, Inc.*, supra, 290 Conn. 796. Finally, as it pertains to an analysis of coverage in an insurance contract, Connecticut law

is clear that a court must conclude that "the language should be construed in favor of the insured unless it has a high degree of certainty that the policy language clearly and unambiguously excludes the claim." (Internal quotation marks omitted.) Id.

"In determining whether the terms of an insurance policy are clear and unambiguous, [a] court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity . . . . Similarly, any ambiguity in a contract must emanate from the language used in the contract rather than from one party's subjective perception of the terms. . . . As with contracts generally, a provision in an insurance policy is ambiguous when it is reasonably susceptible to more than one reading. . . . Under those circumstances, any ambiguity in the terms of an insurance policy must be construed in favor of the insured because the insurance company drafted the policy." (Citations omitted; internal quotation marks omitted.) *Connecticut Medical Ins. Co.* v. *Kulikowski*, supra, 286 Conn. 6.

Mindful of these principles, we turn to the insurance policy at issue. The defendant's professional liability policy (policy) provides coverage for claims against the defendant by reason of an act or omission in the performance of legal services by the defendant or by any person for whom the defendant is legally liable. The policy, however, contains several coverage exclusions. Paragraph B of the exclusion section states: "This policy does not apply to any claim for bodily injury, or injury to, or destruction of, any tangible property, including the loss of use resulting therefrom except that the exclusion of bodily injury does not apply to mental injury, mental anguish, mental tension or emotional distress caused by personal injury . . . ." Bodily injury is defined by the policy as "injury to the body, sickness or disease sustained by any person, including death resulting from such injuries; or mental injury, mental

anguish, mental tension, emotional distress, pain or suffering or shock sustained by any person whether or not resulting from injury to the body, sickness, disease or death of any person." Personal injury is defined by the policy as "an injury resulting from an act or omission arising out of: false arrest, detention, or imprisonment; wrongful entry, or eviction, or other invasion of the right of private occupancy; libel, slander, or other disparaging or defamatory materials; a writing or saying in violation of an individual's right to privacy; malicious prosecution or abuse of process."

We turn now to the plaintiff's claims and their intersections with relevant provisions of the policy. In advancing his motion for summary judgment, the defendant argued that each of the plaintiff's claims is for the destruction of the building on the property and, therefore, excluded by the terms of the policy. In response, the plaintiff argues that the exclusion provision regarding destruction of tangible property does not apply to the unique facts of this case because the negligent act by the defendant occurred long before the building was demolished and that, while destruction of the building is an element of the diminished value of the property, this is not a claim for destruction as contemplated in the policy. More specifically, the plaintiff argues that her claims are based on allegations of negligent acts or omissions by the defendant in the performance of legal representation. The plaintiff further points out that she makes no claim that the defendant caused the destruction of her property. Rather, she claims that her damages were caused by the defendant's failure to adequately review a title search and because of this shortcoming, the defendant failed to learn of an order from the city of Hartford which, by its terms, resulted in the razing of the building by the city with attendant cost to the plaintiff, as property owner. The plaintiff reasons, therefore, that because her claims are

premised on the defendant's allegedly negligent failure to advise her of the encumbrances on the property prior to purchase, and not on a claim that the defendant destroyed the property, the exclusion in the policy should not bar her recovery.

In response, the defendant argues that the language of the contract excluding coverage for the destruction of "tangible property" is clear, unambiguous, and includes structures located on real property, and that because all of the plaintiff's claims arise from the demolition of the building, they constitute claims for "injury to or destruction of tangible property" and are, accordingly, excluded under the policy.

We agree with the plaintiff that her claims, if proven, emanate, not from the destruction of property by the defendant, but rather from the defendant's failure to adequately review the title policy and search the land records in preparation for the transfer of the property. Significantly, the plaintiff is not seeking damages for the destruction of the building itself, but, rather, for the losses she incurred from actions taken by the city of Hartford pursuant to the encumbrances recorded in the land records that the defendant should have advised her of prior to the closing. Viewed in this light, the plaintiff's claims for damages, including the cost of razing the building, engineering services and asbestos sampling are more properly characterized as claims of damages arising from the defendant's alleged malpractice. As such, they are not claims "arising from the injury to or destruction of tangible property." Therefore, while the destruction of the property may be implicated in one aspect of the plaintiff's claim for monetary damages, the claim is based in negligence. Thus, the first count of the complaint sounding in negligence and based on the defendant's acts or omission in regards to his representation of the plaintiff in connection with the purchase of the property is not excluded from coverage by the policy. Accordingly, summary judgment was not properly granted as to the first count.

The defendant additionally argues that, regardless of whether the plaintiff's claims emanate from the destruction of property, the court correctly determined that counts three and four of the complaint seeking damages for emotional distress are explicitly excluded by the policy. We agree.

As previously noted, claims for "bodily injury", which include emotional distress, are excluded from the policy unless they flow from personal injury. Personal injury, in turn, is defined by the policy as "an injury resulting from an act or omission arising out of: false arrest, detention, or imprisonment; wrongful entry, or eviction, or other invasion of the right of private occupancy; libel, slander, or other disparaging or defamatory materials; a writing or saying in violation of an individual's right to privacy; malicious prosecution or abuse of process." Since the pleadings do not set forth a claim for personal injury as covered by the policy, the plaintiff's associated claims for emotional distress fall outside the policy's coverage. Therefore, the court properly determined that the plaintiff could not pursue her claims for emotional distress and summary judgment was correctly rendered as to counts three and four.[6]

---

[6] It should also be noted that the plaintiff's counsel conceded during oral argument on the motion for summary judgment that, if the trial court considered the authenticated insurance policy as proper evidence, then her emotional distress claims are likely not covered. The following exchange took place between the trial court and the plaintiff's counsel:

The Court: "Well, on the third count, the definition of bodily injury in the policy includes emotional distress in its exclusion. However, the exclusion does not apply to emotional distress caused by personal injury. But under personal injury, emotional distress is not included. So I think, at least as to counts three and four, it seems to me the motion for summary judgment should be granted, as well as punitive or exemplary [damages], because I do not think that punitive or exemplary damages can be sustained without a count of recklessness. Do you want to address that?"

\* \* \*

[The Plaintiff's Counsel]: "I don't have a further argument, because the policy is pretty clear on that particular issue. So it's just on the issue—if the court is going to consider the policy, I think that the plaintiff does have— it certainly appears that the language is part of the exclusion. I don't think I can deny that, quite candidly."

The defendant further argues that the court properly granted summary judgment as to the second count on the basis that claims for reckless and wanton conduct are excluded from coverage in the policy. The defendant claims, as well, that since the factual allegations in the second count simply mirror the claims set forth in the first count based on negligence, the alleged behaviors, even if proven, do not constitute wanton or reckless behavior. We agree with the defendant's second basis for affirming the trial court as to this count. While we are not persuaded by the defendant's argument that the policy does not provide coverage for wanton or reckless conduct, we agree that the court correctly determined that the factual allegations of the second count, even if proven, do not constitute wanton or reckless conduct because negligent conduct does not become reckless or wanton merely by relabeling the behavior. See *Brown* v. *Branford*, 12 Conn. App. 106, 110, 529 A.2d 743 (1987) ("[a] plaintiff cannot transform a negligence count into a count for wilful and wanton misconduct merely by appending a string of adjectives to allegations that clearly sound in negligence"). See also *Angiolillo* v. *Buckmiller*, 102 Conn. App. 697, 705, 927 A.2d 312, cert. denied, 284 Conn. 927, 934 A.2d 243 (2007) ("[m]erely using the term 'recklessness' to describe conduct previously alleged as negligence is insufficient as a matter of law").

The factual allegations set forth in the first count, if proven, could form the basis for a fact finder to conclude that the defendant had been negligent. There are no allegations in this count, however, that would justify a finding of wanton or reckless conduct if proven. Because the second count simply incorporates the allegations of negligent conduct contained in the first count and recharacterizes such conduct as reckless and wanton, summary judgment was properly granted as to count two.

## II

The plaintiff's second claim on appeal is that the court improperly sustained the defendant's objections to her discovery requests. We disagree.[7]

As a threshold matter, since discovery rulings are typically interlocutory, we must determine if there is an appealable final judgment in this case in order to determine whether the discovery claim is appropriate for review. "The lack of a final judgment is a jurisdictional defect that mandates dismissal." (Internal quotation marks omitted.) *Kobyluck* v. *Zoning Board of Appeals*, 70 Conn. App. 55, 58, 796 A.2d 567 (2002). "[W]henever a court discovers that it has no jurisdiction, it is bound to dismiss the case, without regard to [its] previous rulings." (Internal quotation marks omitted.) *Zoning Commission* v. *Fairfield Resources Management, Inc.*, 41 Conn. App. 89, 103, 674 A.2d 1335 (1996). Generally, "orders relating to discovery do not constitute a final judgment and are not appealable both because their initial determination does not so conclude the rights of the appealing party that further proceedings cannot affect those rights . . . and because . . . their import is fully apprehended only after trial is concluded." (Citations omitted; internal quotation marks omitted.) *State* v. *Fielding*, 296 Conn. 26, 38, 994 A.2d 96 (2010). Here, because the trial court granted summary judgment, there is an appealable final judgment. The discovery claim asserted by the plaintiff is, therefore, ripe for review.

"With respect to the appropriate standard of review [regarding the court's ruling on discovery], Practice Book § 13-14 (a) provides in relevant part that a trial court may, on motion [to compel production], make such order as the ends of justice require. Consequently,

---

[7] Our conclusion regarding this claim does not imply that the plaintiff should be precluded from seeking further discovery on remand.

the granting or denial of a discovery request rests in the sound discretion of the court . . . and can be reversed only if such an order constitutes an abuse of that discretion. The ultimate issue in our review is, therefore, whether the trial court reasonably could have concluded as it did." (Internal quotation marks omitted.) *Advanced Financial Services, Inc.* v. *Associated Appraisal Services, Inc.*, 79 Conn. App. 22, 42, 830 A.2d 240 (2003).

On the basis of our review of the plaintiff's discovery requests, the defendant's objections and the court's subsequent rulings, we find no reason to conclude that the court's rulings constituted an abuse of discretion. Furthermore, the plaintiff has failed to demonstrate how responses to any of the discovery requests would have assisted her in prosecuting her claims or that the discovery sought would have created a genuine issue of material fact. See *Coss* v. *Steward*, 126 Conn. App. 30, 47, 10 A.3d 539 (2011). Accordingly, we conclude that the court did not abuse its discretion in sustaining the defendant's objections to the discovery requests.

The judgment is reversed only as to count one of the complaint alleging negligence and the case is remanded for further proceedings according to law. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.

