## IN RE JASON M. ET AL.*
## (AC 34585)

Beach, Bear and Dupont, Js.

---

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79a-12, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

Argued November 14, 2012—officially released January 30, 2013**

---

** January 30, 2013, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

*Charline P.*, pro se, the appellant (respondent mother).

*Michael Besso*, assistant attorney general, with whom, on the brief, were *George Jepsen*, attorney general, and *Benjamin Zivyon*, assistant attorney general, for the appellee (petitioner).

*Marisa F. Schafer*, for the minor child Jason M.

*Barry A. Charles*, for the minor child Rosalinda P.

*Christopher P. Brennan*, for the minor children Hudsana P. and Richardson P.

*Opinion*

BEAR, J. The respondent mother, Charline P., appeals from the judgments of the trial court, rendered in favor of the petitioner, the commissioner of children and families, terminating the respondent's parental rights as to four of her minor children: Jason M., Rosalinda P.,

Hudsana P. and Richardson P.[1] On appeal, the respondent claims that the trial court (1) violated her due process right to notice and her right to confrontation; (2) made clearly erroneous factual findings; (3) improperly shifted the burden of proof to her on the issue of her personal rehabilitation; and (4) abused its discretion in denying several of her motions.[2] We affirm the judgments of the trial court.[3]

The following facts, which were found by the trial court, and procedural history are relevant to our resolution of the respondent's claims. In the cases that are

---

[1] Pierre M. is the father of Jason, and Hudson P. is the father of the three younger children. Pierre M. and Hudson P. were respondents in the termination proceeding. They did not appeal from the decisions of the trial court terminating their parental rights. Accordingly, we refer to Charline P. as the respondent.

[2] The respondent makes two additional claims on appeal, both of which we conclude are inadequately briefed. The respondent first claims that the trial court "erred in failing to consider that [the petitioner] provided deceptive allegations, fraud, and misrepresentation on the social study, perjured letter and suppression of the truth." The respondent concedes that this claim is inadequately briefed, but argues that we should review the claim because it is a matter of public interest. We, however, decline her invitation. "Although we are solicitous of the rights of pro se litigants . . . [s]uch a litigant is bound by the same rules . . . and procedure as those qualified to practice law. . . . [W]e are not required to review claims that are inadequately briefed. . . . We consistently have held that [a]nalysis, rather than mere abstract assertion, is required to avoid abandoning an issue by failure to brief the issue properly." (Internal quotation marks omitted.) *In re Brianna L.*, 139 Conn. App. 239, 250, 55 A.3d 572 (2012).

The respondent's second additional claim is that "the trial court erred by not considering that Dr. [Rodolfo] Rosado [a psychologist] set the [September] 2011 [reunification plan] up for failure by first [starting] with Jason; [h]e was unaware that Jason['s] ongoing visitation never cease[d]; [and] [t]he court accepted his erroneous opinion as [fact] without [the respondent's] right to cross-examine." We note, however, that the respondent asserts facts from outside the record to support this claim and also that she does not provide any analysis of her claim. This claim, thus, is inadequately briefed and, therefore, we decline to afford it review. See *In re Brianna L.*, supra, 139 Conn. App. 250.

[3] Counsel for Jason notified this court that she had concluded that the respondent's position in this appeal was "most consistent with [Jason's] wishes." Counsel for Rosalinda, Hudsana and Richardson notified this court

on appeal, the petitioner filed termination of parental rights petitions against the respondent concerning four of her seven children: Jason, born on December 16, 2000; Rosalinda, born on May 12, 2004; Hudsana, born on January 23, 2007; and Richardson, born on May 27, 2008.[4]

The proceedings that eventually resulted in the filing of the petitions began on October 10, 2007, when the petitioner filed neglect petitions and motions for orders of temporary custody concerning Jason, Rosalinda and Hudsana as a result of the respondent's involuntary hospitalization due to certain mental health conditions. The court granted the orders of temporary custody. The court found the following additional facts.

The day after Richardson was born, the department of children and families (department) removed him on a ninety-six hour hold. See General Statutes § 17a-101g. On May 29, 2008, the petitioner filed a neglect petition on the grounds that Richardson had been denied proper care and attention, physically, educationally, emotionally or morally, and that he had been permitted to live under conditions, circumstances or associations injurious to his well-being (conditions injurious).

On May 21, 2009, the court adjudicated Jason, Rosalinda and Hudsana neglected pursuant to General Statutes (Rev. to 2007) § 46b-120 (9) (A) (B) and (C) and committed the children to the care, custody and control of the department. On June 17, 2009, the petitioner filed a motion to review the permanency plan of reunification with the respondent for Jason, Rosalinda and Hudsana.

On October 28, 2009, the respondent entered a no contest plea to the conditions injurious ground of the

that he had concluded that the petitioner's position in this appeal was "most consistent with [their] wishes."

[4] The respondent has three other children who are not parties to this action. We thus will refer to the four children at issue in this appeal, collectively, as the children.

neglect petition with respect to Richardson, and the child was adjudicated neglected and placed under protective supervision with the respondent for a period of six months. Specific steps were ordered for the respondent. On November 13, 2009, the respondent reported to the department that she needed a full-time nanny for Richardson and gave the department until December 2, 2009, to decide if it would pay for the nanny; otherwise, she planned to send Richardson to Haiti. On November 18, 2009, the petitioner filed an ex parte motion for an order of temporary custody for Richardson, which was granted by the court. On November 20, 2009, the petitioner filed a motion to modify disposition concerning Richardson from protective supervision to commitment. On April 21, 2010, the court sustained the order of temporary custody for Richardson and committed him to the care, custody and control of the petitioner.

On April 21, 2010, the petitioner filed a motion to review the permanency plan of termination of parental rights and adoption for Jason, Rosalinda, Hudsana and Richardson. On May 4, 2010, the respondent filed an objection thereto. On July 26, 2010, the petitioner filed petitions relating to each of the children: with respect to Jason, the petitioner sought to terminate the parental rights of the respondent on the basis of the respondent's failure to achieve a sufficient degree of personal rehabilitation and a lack of an ongoing parent-child relationship; with respect to Rosalinda and Hudsana, the petitioner sought to terminate the parental rights of the respondent on the basis of the respondent's failure to rehabilitate, no ongoing parent-child relationship, and her failure to rehabilitate concerning a child younger than age seven after a prior termination of her parental rights as to another child; and, with respect to Richardson, the petitioner sought to terminate the parental rights of the respondent on the basis of her failure to

rehabilitate and her failure to rehabilitate concerning a child younger than age seven after a prior termination of her parental rights as to another child.[5]

On July 27, 2010, the respondent filed a motion to modify the dispositions from commitment to protective supervision. On August 6, 2010, the petitioner filed a motion for a reasonable efforts determination, which the court, on August 27, 2010, deferred until trial on the petitions. On August 30, 2011, the court approved a stipulated agreement that provided for a reunification plan. Under the plan, developed in consultation with Rodolfo Rosado, a psychologist, the respondent was provided with an opportunity to demonstrate her ability to parent appropriately her children who were not in her care. Jason was to be reunified with the respondent first and, if that reunification was successful, then the other children would be reunified sequentially.

On November 7, 2011, in court, the parties discussed Rosado's recommendation against further reunifications based on what had transpired after Jason was reunified with the respondent. Jason's functioning had significantly deteriorated during his trial reunification period. He was having significant behavioral issues at school. Rosado opined that "Jason's behavior gets worse the more time he spends with [the respondent]." On December 20, 2011, the court suspended the reunification plan and scheduled the matter for trial based on the respondent's lack of progress in reunifying with Jason.

The termination of parental rights trial occurred on April 16, 2012. On April 24, 2012, the court filed its memorandum of decision in which it concluded that the petitioner had proven by clear and convincing evidence, as required by General Statutes § 17a-112 (j) (1),

---

[5] On August 8, 2006, the respondent's parental rights as to another child were terminated pursuant to a petition filed by the petitioner.

that the department had made reasonable efforts to reunify the children with the respondent.[6] The court also concluded that the petitioner had proven by clear and convincing evidence that the respondent had failed to achieve a sufficient degree of rehabilitation with respect to any of the four children, as required by § 17a-112 (j) (3) (B) (i), and that there existed no ongoing parent-child relationship between the respondent and Jason, Rosalinda and Hudsana, pursuant to § 17a-112 (j) (3) (D).[7] Finally, the court concluded that the petitioner had proven by clear and convincing evidence that termination of the respondent's parental rights was in the best interest of the children, as required by § 17a-112 (j) (2).[8] After making the necessary findings, as required by § 17a-112 (k), the court concluded that the

[6] General Statutes § 17a-112 (j) provides in relevant part: "The Superior Court, upon notice and hearing as provided in sections 45a-716 and 45a-717, may grant a petition filed pursuant to this section if it finds by clear and convincing evidence that (1) the Department of Children and Families has made reasonable efforts to locate the parent and to reunify the child with the parent in accordance with subsection (a) of section 17a-111b, unless the court finds in this proceeding that the parent is unable or unwilling to benefit from reunification efforts . . . ."

[7] General Statutes § 17a-112 (j) provides in relevant part: "The Superior Court, upon notice and hearing as provided in sections 45a-716 and 45a-717, may grant a petition filed pursuant to this section if it finds by clear and convincing evidence that . . . (3) . . . (B) the child (i) has been found by the Superior Court or the Probate Court to have been neglected or uncared for in a prior proceeding . . . and the parent of such child . . . has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child; [or] (D) there is no ongoing parent-child relationship, which means the relationship that ordinarily develops as a result of a parent having met on a day-to-day basis the physical, emotional, moral and educational needs of the child and to allow further time for the establishment or reestablishment of such parent-child relationship would be detrimental to the best interest of the child . . . ."

[8] General Statutes § 17a-112 (j) provides in relevant part: "The Superior Court, upon notice and hearing as provided in sections 45a-716 and 45a-717, may grant a petition filed pursuant to this section if it finds by clear and convincing evidence that . . . (2) termination is in the best interest of the child . . . ."

parental rights of the respondent should be terminated. Accordingly, the court granted the petitions, granted the motion for a determination that the department had made reasonable efforts for reunification and denied the respondent's motion to modify disposition from commitment to protective supervision. This appeal followed. Additional facts will be set forth as necessary.

I

The respondent's first claim on appeal is that she lacked notice that the trial would begin on April 16, 2012. The respondent claims that her due process rights and her right to confrontation were violated because she did not receive notice of the trial and that the trial court proceeded in her absence.[9] We are not persuaded.

"[T]he essence of due process is the requirement that a person in jeopardy of serious loss [be given] notice of the case against him and [an] opportunity to meet it." (Internal quotation marks omitted.) *State* v. *Lopez*, 235 Conn. 487, 493, 668 A.2d 360 (1995). "[F]or more than a century the central meaning of procedural due process has been clear: Parties whose rights are to be affected are entitled to be heard; and in order that they may enjoy that right they must first be notified. . . . It is equally fundamental that the right to notice and an opportunity to be heard must be granted at a meaningful time and in a meaningful manner. . . . [T]hese principles require that a [party] have . . . an effective opportunity to defend by confronting any adverse witnesses and by presenting his own arguments and evidence orally." (Citation omitted; internal quotation marks

[9] The respondent requests that the court review her due process claim under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). The petitioner, however, concedes that the respondent's trial counsel properly preserved the claim by requesting that the court continue the matter and by objecting to the trial proceeding. Upon our review of the record, we conclude that the claim was preserved adequately by the respondent's trial counsel.

omitted.) *In re DeLeon J.*, 290 Conn. 371, 378, 963 A.2d 53 (2009). "Due process requires notice that would be deemed constitutionally adequate in a civil or criminal proceeding. . . . Notice, to comply with due process requirements, must be given sufficiently in advance of scheduled court proceedings so that reasonable opportunity to prepare will be afforded, and it must set forth the alleged misconduct with particularity." (Citations omitted; internal quotation marks omitted.) *In re Donna M.*, 33 Conn. App. 632, 638, 637 A.2d 795, cert. denied, 229 Conn. 912, 642 A.2d 1207 (1994).

The respondent did not appear at the trial on April 16, 2012. She avers that she did not receive notice.[10] The record, however, reflects otherwise. Kimberly Watson, a social worker with the department, testified that, in the week prior to the trial, she spoke to the respondent about the trial date and arranged for a cab service to transport the respondent to court. Watson testified that she gave the respondent a letter setting forth "the exact times and dates and the location" of the trial. This letter was admitted at trial as petitioner's exhibit 10. The letter sets forth both the trial dates and that transportation to and from court would be provided for the respondent each day of the trial. Watson also testified that the respondent called her on the Friday before the trial to say that she would not appear. Watson further testified that the cab service arrived to transport the respondent to court on the morning of the trial, waited for thirty minutes, the respondent did not appear and the cab service left without the respondent. Also, the record reveals that the respondent's counsel had

---

[10] The respondent also mentions that she did not receive notice that a default judgment would enter against her on the date of the trial. We note, however, that no default judgment entered. Instead, the court rendered judgments on the merits in a thorough memorandum of decision. We also note that, although the court stated that the respondent would be defaulted if she did not appear in court on September 21, 2010, default did not enter on that day because the respondent appeared.

notice because her counsel appeared at the trial on her behalf and was prepared to proceed. Finally, although not mentioned by the court in its decision, the memorandum of hearing for the in-court proceeding on December 11, 2011, confirms that the respondent and her attorney were present in court when the court established the dates of trial and the pretrial filing schedule. The respondent thus had personal notice from the court of the dates of trial.[11]

Accordingly, on the basis of our review of the record, we conclude that the respondent had notice, her counsel had notice and her trial counsel appeared on her behalf on April 16, 2012, and was ready to proceed with the trial. We conclude that the respondent's due process claim has no merit.

Additionally, insofar as the respondent claims that her sixth amendment right to confrontation was violated because she, personally, did not have the right to confront the witnesses against her, we find no merit in her assertion. It is black letter law that a defendant in a criminal trial may waive her right of confrontation in a number of ways, including her voluntary and deliberate absence from trial. *State* v. *Jones*, 281 Conn. 613, 636, 916 A.2d 17, cert. denied, 552 U.S. 868, 128 S. Ct. 164, 169 L. Ed. 2d 112 (2007). Likewise, a respondent in a parental rights termination proceeding may waive her right of confrontation by deliberate absence. See *In re Tremaine C.*, 117 Conn. App. 521, 532–33, 980 A.2d 317, cert. denied, 294 Conn. 920, 984 A.2d 69 (2009).The court found that the respondent voluntarily and deliberately absented herself from trial, and that finding was not clear error.

## II

The respondent next claims that the court made several clearly erroneous factual findings, including: (1) its

---

[11] See also footnote 16 of this opinion.

reasonable efforts determination; (2) the respondent's failure to rehabilitate; (3) the lack of an ongoing parent-child relationship; and (4) that termination of her parental rights was in the best interest of each of the children. After setting forth our standard of review, we will consider each of these in turn.

"Our standard of review on appeal from a termination of parental rights is whether the challenged findings are clearly erroneous. . . . The determinations reached by the trial court that the evidence is clear and convincing will be disturbed only if [any challenged] finding is not supported by the evidence and [is], in light of the evidence in the whole record, clearly erroneous. . . .

"On appeal, our function is to determine whether the trial court's conclusion was legally correct and factually supported. . . . We do not examine the record to determine whether the trier of fact could have reached a conclusion other than the one reached . . . nor do we retry the case or pass upon the credibility of the witnesses. . . . Rather, on review by this court every reasonable presumption is made in favor of the trial court's ruling." (Internal quotation marks omitted.) *In re Destiny R.*, 134 Conn. App. 625, 628–29, 39 A.3d 727, cert. denied, 304 Conn. 932, 43 A.3d 660 (2012).

"In order to terminate a parent's parental rights under § 17a-112, the petitioner is required to prove, by clear and convincing evidence, that: (1) the department has made reasonable efforts to reunify the family; General Statutes § 17a-112 (j) (1); (2) termination is in the best interest of the child; General Statutes § 17a-112 (j) (2); and (3) there exists any one of the seven grounds for termination delineated in § 17a-112 (j) (3)." (Internal quotation marks omitted.) *In re Melody L.*, 290 Conn. 131, 148–49, 962 A.2d 81 (2009).

"A hearing on a petition to terminate parental rights consists of two phases, adjudication and disposition.

. . . In the adjudicatory phase, the trial court determines whether one of the statutory grounds for termination of parental rights [under § 17a-112 (j)] exists by clear and convincing evidence. If the trial court determines that a statutory ground for termination exists, it proceeds to the dispositional phase. In the dispositional phase, the trial court determines whether termination is in the best interests of the child." (Internal quotation marks omitted.) *In re Destiny R.*, supra, 134 Conn. App. 629.

## A

### Reasonable Efforts

The respondent claims that the court committed clear error in finding that the petitioner had proven by clear and convincing evidence that the department had made reasonable efforts to reunify the respondent with the children, that prior reunification efforts had failed and that the respondent was unwilling and unable to benefit from the reunification efforts. We disagree.

"In order to terminate parental rights under § 17a-112 (j), the [petitioner] is required to prove, by clear and convincing evidence, that [the department] has made reasonable efforts . . . to reunify the child with the parent, unless the court finds . . . that the parent is unable or unwilling to benefit from the reunification . . . . [Section 17a-112] imposes on the department the duty, inter alia, to make reasonable efforts to reunite the child or children with the parents. The word reasonable is the linchpin on which the department's efforts in a particular set of circumstances are to be adjudged, using the clear and convincing standard of proof. Neither the word reasonable nor the word efforts is, however, defined by our legislature or by the federal act from which the requirement was drawn. . . . [R]easonable efforts means doing everything reasonable, not

everything possible." (Internal quotation marks omitted.) *In re Jason R.*, 129 Conn. App. 746, 767–68, 23 A.3d 18 (2011), aff'd, 306 Conn. 438, 51 A.3d 334 (2012).

"Thus, the [petitioner] must prove [by clear and convincing evidence] *either* that [the department] has made reasonable efforts to reunify or, *alternatively*, that the parent is unwilling or unable to benefit from the reunification efforts. Section 17a-112 (j) clearly provides that the [petitioner] is not required to prove both circumstances. Rather, either showing is sufficient to satisfy this statutory element." (Emphasis in original; internal quotation marks omitted.) *In re Anvahnay S.*, 128 Conn. App. 186, 191, 16 A.3d 1244 (2011).

"The trial court's determination of this issue will not be overturned on appeal unless, in light of all of the evidence in the record, it is clearly erroneous. . . . A finding is clearly erroneous when either there is no evidence in the record to support it, or the reviewing court is left with the definite and firm conviction that a mistake has been made." (Internal quotation marks omitted.) *In re Jason R.*, supra, 129 Conn. App. 768. "[E]very reasonable presumption is made in favor of the trial court's ruling." (Internal quotation marks omitted.) *In re Melody L.*, supra, 290 Conn. 145.

In concluding that the petitioner met her burden of demonstrating that the department had made reasonable efforts to reunify the respondent with the children, the court found the following relevant facts. The department offered reunification services to the respondent, such as "mental health treatment, individual and family therapy, unsupervised and supervised visitation, parenting education, day care assistance, financial assistance, and case management." During the time period when she was offered such services, the respondent "demonstrated a pattern of behavior detrimental to the children . . . . Her behavior was dysfunctional, impractical,

impulsive, unstable, maladaptive, and self-defeating. . . . Due to her unresolved mental health issues, [she] continued to exercise poor judgment and impulse control. Her behavior had an adverse impact on the children." The court also found that, although the respondent had participated in the recommended services, she "failed to make sufficient progress in addressing the child protection concerns . . . ." The court further found that the respondent "has been unable or unwilling to meet and address the children's basic and special needs . . . [s]he has been unable to put her children's needs above her own wishes and desires [and] . . . [h]er parenting skills have not improved to a sufficient degree."

Our review of the record has left us with no legal basis to question the factual findings that led to the court's determination that the petitioner had proven by clear and convincing evidence that the department had made reasonable efforts to reunify the respondent with the children. There is sufficient evidence to support each factual finding set forth by the court in support of its determination that the department had made reasonable efforts to reunify the respondent with the children. Accordingly, we find no merit in the respondent's claim.

## B

### Failure to Rehabilitate

The respondent claims that the court erred in concluding that the petitioner had proven by clear and convincing evidence that the respondent had failed to rehabilitate. Specifically, the respondent argues that the factual findings upon which the court relied in concluding that she had failed to rehabilitate were clearly erroneous. We disagree.

"On appeal, we review a trial court's finding that a parent has failed to rehabilitate . . . in accordance

with the rules that apply generally to a trier's finding of fact. We will overturn such a finding of fact only if it is clearly erroneous in light of the evidence in the whole record. . . . We do not examine the record to determine whether the trier of fact could have reached a conclusion other than the one reached. . . . [O]n review by this court every reasonable presumption is made in favor of the trial court's ruling." (Internal quotation marks omitted.) *In re Destiny R.*, supra, 134 Conn. App. 641.

"[T]he adjudicatory determination to be made by the trial court is whether the parent of a child who has been found by the [trial] court to have been neglected and uncared for in a prior proceeding has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child. . . . Personal rehabilitation as used in the statute refers to the restoration of a parent to his or her former constructive and useful role as a parent. . . . In conducting this inquiry, the trial court must analyze the respondent's rehabilitative status as it relates to the needs of the particular child . . . . The trial court must also determine whether the prospects for rehabilitation can be realized within a reasonable time given the age and needs of the child. . . .

"Although the standard is not full rehabilitation, the parent must show more than any rehabilitation. . . . Successful completion of the petitioner's expressly articulated expectations is not sufficient to defeat the petitioner's claim that the parent has not achieved sufficient rehabilitation." (Citation omitted; internal quotation marks omitted.) Id., 646–47.

In determining that the respondent had failed to achieve such a degree of personal rehabilitation as

would encourage the belief that within a reasonable time, considering the age and needs of the children, the respondent could assume a responsible position in the lives of the children, the court made the following factual findings. Regarding the first element, the court found that each of the four children had been found to be neglected in a prior proceeding. The court found that the respondent was ordered to complete certain specific steps geared toward reunifying her with the children but that the respondent "failed to comply fully with the specific steps." The respondent "had further involvement with the criminal justice system, [and] [s]he failed to consistently and timely meet and address the children's emotional needs." Further, the court found that "[e]ven though [the respondent] complied with many of the specific steps and cooperated with service providers, she failed to make sufficient progress toward addressing the child protection concerns." The court then found that the respondent, when caring for the children, "expressed feelings of being overwhelmed to the point of wanting to harm the children [and that] [s]he exhibited erratic and combative behaviors after requesting [the department] to care for her children." The court noted that David Mantell, a court-appointed psychologist, "reported that [the respondent] was not likely to achieve sufficient rehabilitation to parent her children, given the lack of progress she had made despite the level of services that had been provided." The court further found that "[t]he children's health, safety and welfare were at risk in [the respondent's] care [and that the respondent had] failed to demonstrate sufficient progress to manage the children adequately."

On the basis of our review of the record, we find no support for the respondent's claim that the court erred in concluding that she had failed to rehabilitate. The court's factual findings are supported by sufficient evidence in the record and, therefore, are not clearly erroneous. After reviewing the court's findings, we conclude

that the court properly relied upon its factual findings in determining that the respondent had failed to achieve such a degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the children, the respondent could assume a responsible position in the lives of the children. We conclude, therefore, that the court did not err in concluding that the respondent had failed to rehabilitate.

## C

### Lack of an Ongoing Parent-Child Relationship

The respondent claims that the court erred in concluding that there was no ongoing parent-child relationship between her and the children. "Because the statutory grounds necessary to grant a petition for termination of parental rights are expressed in the disjunctive, the court need find only one ground to grant the petition. Thus, we may affirm the court's decision if we find that it properly concluded that any one of the statutory circumstances existed." (Internal quotation marks omitted.) *In re Vanna A.*, 83 Conn. App. 17, 25–26, 847 A.2d 1073 (2004). Having concluded that the court properly found that there was clear and convincing evidence that the respondent had failed to achieve the required degree of personal rehabilitation demanded by § 17a-112 (j) with respect to each of the four children, we need not address this claim.

## D

### Best Interest of the Children

The respondent claims that the court made clearly erroneous findings that led to its determination that the termination of her parental rights was in the best interest of the four children. We disagree.

"In the dispositional phase of a termination of parental rights hearing, the emphasis appropriately shifts from the conduct of the parent to the best interest of the child[ren]. . . . It is well settled that we will overturn the trial court's decision that the termination of parental rights is in the best interest of the children only if the court's findings are clearly erroneous. . . . In the dispositional phase of a termination of parental rights hearing, the trial court must determine whether it is established by clear and convincing evidence that the continuation of the respondent's parental rights is not in the best interest of the child[ren]." (Internal quotation marks omitted.) *In re Sarah O.*, 128 Conn. App. 323, 340, 16 A.3d 1250, cert. denied, 301 Conn. 928, 22 A.3d 1275 (2011). "In arriving at this decision, the court is mandated to consider and make written findings regarding seven factors delineated in [§ 17a-112 (k)]. . . . The seven factors serve simply as guidelines for the court and are not statutory prerequisites that need to be proven before termination can be ordered. . . . There is no requirement that each factor be proven by clear and convincing evidence." (Citation omitted; internal quotation marks omitted.) *In re Jason B.*, 137 Conn. App. 408, 422–23, 48 A.3d 676 (2012).

The court considered and made written findings regarding the factors set forth in § 17a-112 (k).[12] The

---

[12] General Statutes § 17a-112 (k) provides: "Except in the case where termination is based on consent, in determining whether to terminate parental rights under this section, the court shall consider and shall make written findings regarding: (1) The timeliness, nature and extent of services offered, provided and made available to the parent and the child by an agency to facilitate the reunion of the child with the parent; (2) whether the Department of Children and Families has made reasonable efforts to reunite the family pursuant to the federal Adoption Assistance and Child Welfare Act of 1980, as amended; (3) the terms of any applicable court order entered into and agreed upon by any individual or agency and the parent, and the extent to which all parties have fulfilled their obligations under such order; (4) the feelings and emotional ties of the child with respect to such child's parents, any guardian of such child's person and any person who has exercised physical care, custody or control of the child for at least one year and with

court made the following specific findings of fact in relation to the factors set forth in § 17a-112 (k). First, the department provided the respondent with reunification services, "including mental health treatment, individual and family therapy, unsupervised and supervised visitation, parenting education, day care assistance, financial assistance, and case management." The services were offered and provided on a consistent, timely and sufficient basis. Second, the department "made reasonable efforts to reunify the family . . . by offering services to address the child protection concerns." Third, the court ordered the respondent to cooperate and comply with specific steps toward reunification, which included the services offered by the department. The services were designed to address the problems that led to the removal of the children from her care. The respondent failed to fulfill her obligations under the specific steps and did not make sufficient progress in addressing the stated concerns. Fourth, "[t]he children . . . have expressed positive feelings toward [the respondent, but] Jason and Rosalinda have also expressed negative feelings toward [her]. The children have not wished to attend visits and have struggled with their behavior surrounding visits." Furthermore, the children have been in foster care for years and have established bonds with their foster families. Fifth, at

whom the child has developed significant emotional ties; (5) the age of the child; (6) the efforts the parent has made to adjust such parent's circumstances, conduct, or conditions to make it in the best interest of the child to return such child home in the foreseeable future, including, but not limited to, (A) the extent to which the parent has maintained contact with the child as part of an effort to reunite the child with the parent, provided the court may give weight to incidental visitations, communications or contributions, and (B) the maintenance of regular contact or communication with the guardian or other custodian of the child; and (7) the extent to which a parent has been prevented from maintaining a meaningful relationship with the child by the unreasonable act or conduct of the other parent of the child, or the unreasonable act of any other person or by the economic circumstances of the parent."

the time of trial, Jason was twelve years old, Rosalinda was seven years old, Hudsana was five years old and Richardson was three years old. Sixth, the respondent was diagnosed with narcissistic personality disorder, and she participated in mental health treatment and parenting education, but she did not benefit from the services to the degree that she was able to meet and address any of her children's basic and special needs. The court ultimately found that the respondent "has not made sufficient progress in addressing the child protection concerns that would allow her to safely care for and parent the children now or in the foreseeable future." Seventh, the respondent was not prevented from maintaining a meaningful relationship with the children. Additionally, the court found that the respondent was unable "to provide safe and competent parenting to any of the children [and that she] failed to make sufficient changes in her circumstances so that she can play a responsible role in the lives of these children." In light of these factual findings, the court concluded that termination of the respondent's parental rights was in the best interest of the children.

Following a thorough review of the record, we find no support for the respondent's claim that the court's findings were clearly erroneous. To the contrary, each of the court's factual findings is supported by sufficient evidence in the record. We conclude, therefore, that the court's findings, which led to its conclusion that the termination of the respondent's parental rights was in the best interest of each of the children, were not clearly erroneous.

III

The respondent next claims that the court erred by improperly shifting the burden of proof to her on the issue of personal rehabilitation. We are not persuaded.

"When a party contests the burden of proof applied by the trial court, the standard of review is de novo because the matter is a question of law." (Internal quotation marks omitted.) *In re Jason R.*, supra, 129 Conn. App. 758.

In its memorandum of decision, the court provided two specific statements regarding the burden of proof. "In the adjudicatory phase, the court must next determine whether the [petitioner] has proved one of the statutory grounds for termination of parental rights." "The petitioner is required to prove, by clear and convincing evidence, that one of the specific statutory bases for termination has been established." (Internal quotation marks omitted.) In analyzing whether the respondent had "failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child," the court made numerous statements regarding the respondent's behavior. Specifically, the court addressed the respondent's failure to comply with specific steps required for reunification in demonstrating that the respondent "failed to make sufficient progress toward addressing the child protection concerns."

After reviewing the court's memorandum of decision, it is evident that the court did not shift the burden of proof to the respondent on the issue of her rehabilitation. To the contrary, the court made explicit statements demonstrating that it placed the proper burden of proof on the petitioner. Additionally, the court's thorough analysis of the relevant standards and the evidence adduced at trial demonstrates that the court strictly held the petitioner to her burden of proof. We conclude, therefore, that the respondent's claim has no merit.

IV

The respondent's final claim is that the court abused its discretion in denying several of her motions. The motions at issue in this claim are the respondent's (1) motion to open the termination of parental rights judgments because of ineffective assistance of counsel; (2) motion to disqualify the trial court judge; (3) motion for a continuance; (4) motion to open and order a new trial; (5) motion to compel production; and (6) motion to modify disposition. We will address each of these in turn.

A

Motion to Open the Judgments

The respondent claims that the court erred in denying her motion to open the judgments on the basis of her ineffective assistance of counsel claim. Specifically, the respondent argues that her counsel failed to advocate for her and that he spoke against her during the trial. We are not persuaded.

"Our review of a court's denial of a motion to open . . . is well settled. We do not undertake a plenary review of the merits of a decision of the trial court to grant or to deny a motion to open a judgment. . . . In an appeal from a denial of a motion to open a judgment, our review is limited to the issue of whether the trial court has acted unreasonably and in clear abuse of its discretion. . . . In determining whether the trial court abused its discretion, this court must make every reasonable presumption in favor of its action. . . . The manner in which [this] discretion is exercised will not be disturbed so long as the court could reasonably conclude as it did." (Internal quotation marks omitted.) *In re Valerie G.*, 132 Conn. App. 652, 665–66, 34 A.3d 398 (2011), cert. denied, 303 Conn. 937, 36 A.3d 696 (2012).[13]

---

[13] The respondent requests that we review her claim of ineffective assistance of counsel under the plain error doctrine. See Practice Book § 60-5. Because the respondent has not provided any legal basis for us to do so,

The respondent argues that she was denied effective assistance of counsel and that the court should have opened the judgments on this basis. The respondent, however, fails to provide any reason that would cause us to question the court's denial of her motion to open. Without any support for her claim that her trial counsel failed to provide effective legal representation, especially in light of her deliberate absence from the trial, we have no reason to believe that the court acted unreasonably in denying the respondent's motion to open the judgments. We conclude, therefore, that the respondent has failed to demonstrate that the court abused its discretion in denying the respondent's motion to open the judgments on the ground of ineffective assistance of counsel.

B

Motion to Disqualify

The respondent claims that the court erred in denying her motion to disqualify the trial court judge. The respondent argues that the trial judge harbored bias against her, which the trial judge demonstrated by helping the petitioner present her case and by making a statement about the respondent's personality. We are not persuaded.

"The inquiry into whether a motion for disqualification properly was ruled upon is governed by the abuse of discretion standard of review. . . . In applying that standard, we ask whether an objective observer reasonably would doubt the judge's impartiality given the circumstances. . . . If an objective observer, in view of all the facts would reasonably doubt the court's impartiality, the court's discretion would be abused if a motion to recuse were not granted. In determining

---

we decline the respondent's invitation and employ the appropriate standard of review for a motion to open a judgment.

whether there has been an abuse of discretion, every reasonable presumption should be given in favor of the correctness of the court's ruling. . . . Reversal is required only where an abuse of discretion is manifest or where injustice appears to have been done. . . . [A] factual basis is necessary to determine whether a reasonable person, knowing all of the circumstances, might reasonably question the trial judge's impartiality. . . . Vague and unverified assertions of opinion, speculation and conjecture cannot support a motion to recuse . . . ." (Citations omitted; internal quotation marks omitted.) *McKenna* v. *Delente*, 123 Conn. App. 137, 143–44, 1 A.3d 260 (2010).[14]

The respondent first argues that the trial judge demonstrated bias against her by assisting the petitioner in making her case. The trial transcript demonstrates that, prior to the beginning of the trial, the petitioner began to present the testimony of a witness to prove that the respondent had received notice of the trial date. The trial judge, however, inquired of the petitioner whether the witness' testimony could be presented during the petitioner's case-in-chief. The petitioner responded in the affirmative and agreed to present the witness' testimony at a later time. We are of the opinion that the trial judge's direction to the petitioner merely was an exercise of the court's case management authority and, therefore, does not support the respondent's assertion of the trial judge's bias against her. "The case management authority is an inherent power necessarily vested in trial courts to manage their own affairs in order to achieve the expeditious disposition of cases. . . . The ability of trial judges to manage cases is essential to judicial economy and justice." (Citation omitted.)

---

[14] The respondent requests that we review her claim under the plain error doctrine. See Practice Book § 60-5. The respondent has not provided any legal basis for us to do so. The appropriate standard of review for this claim is abuse of discretion. *McKenna* v. *Delente*, supra, 123 Conn. App. 143.

*Krevis* v. *Bridgeport*, 262 Conn. 813, 819, 817 A.2d 628 (2003).

The respondent also argues that the trial judge demonstrated bias against her by making a statement about her personality. In denying her counsel's motion to withdraw, the trial judge stated: "In many cases, litigants and attorneys have disagreements. They need to work through them. The [respondent] has decided not to appear today. I think that reflects on part of her attitude toward the case. . . . [I]n the interest of justice, and also judicial economy, the motion to withdraw appearance is denied for lack of good cause." The court also acknowledged the respondent's motion for a continuance, which the court described as "part [and] parcel of the motion to withdraw," and subsequently denied. In light of the respondent's intentional absence and the motions that the respondent filed, the trial judge's statement would not cause an independent observer to question the trial judge's impartiality. It is more likely that an independent observer would view the trial judge's statement as an objective observation based on the respondent's deliberate failure to appear and her filing of motions designed to delay or avoid the proceedings, rather than as an expression of bias against the respondent. We are not persuaded, therefore, that the court abused its discretion in denying the respondent's motion to disqualify.

C

Motion for a Continuance

The respondent claims that the court abused its discretion in denying her motion for a continuance. She argues that the court improperly considered the length of the trial, that she had had a total of eight attorneys during the lengthy history of the proceedings, and the experience of her trial counsel. We are not persuaded.

"[T]he determination of whether to grant a request for a continuance is within the discretion of the trial court, and will not be disturbed on appeal absent an abuse of discretion. . . . A reviewing court is bound by the principle that [e]very reasonable presumption in favor of the proper exercise of the trial court's discretion will be made. . . . Our role as an appellate court is not to substitute our judgment for that of a trial court that has chosen one of many reasonable alternatives." (Internal quotation marks omitted.) *Mitchell* v. *Commissioner of Correction*, 93 Conn. App. 719, 724, 891 A.2d 25, cert. denied, 278 Conn. 902, 896 A.2d 104 (2006).[15]

"Among the factors that may enter into the court's exercise of discretion in considering a request for a continuance are the timeliness of the request for continuance; the likely length of the delay"; (internal quotation marks omitted) *State* v. *Crawley*, 138 Conn. App. 124, 136, 50 A.3d 349, cert. denied, 307 Conn. 925, 55 A.3d 565 (2012); "the age and complexity of the case"; *State* v. *Hamilton*, 228 Conn. 234, 240, 636 A.2d 760 (1994); "the impact of delay on the litigants, witnesses, opposing counsel and the court; the perceived legitimacy of the reasons proffered in support of the request . . .

_____

[15] In her brief, the respondent argues that the court's denial of her motion for a continuance infringed upon a constitutional right. The respondent does not allege a specific constitutional right that was violated. We consider this argument abandoned due to inadequate briefing and, therefore, decline to afford it review. See *State* v. *Heredia*, 139 Conn. App. 319, 327 n.4, 55 A.3d 598 (2012).

The respondent also argues that the court denied her motion for a continuance in violation of General Statutes § 52-196, which provides: "Whenever in any action pending in the Superior Court a motion for postponement or continuance is made by either party and such motion is granted, the court may require the party making the same to pay to the adverse party such sum by way of indemnity as it deems reasonable." Section 52-196, however, has no relevancy to the respondent's motion for a continuance because the respondent's motion was denied. We, therefore, decline to review this argument.

the timing of the request; the likelihood that the denial would substantially impair the defendant's ability to defend himself; [and] the availability of other, adequately equipped and prepared counsel to try the case. . . . We are especially hesitant to find an abuse of discretion where the court has denied a motion for continuance made on the day of the trial. . . . In order to work a delay by a last minute [replacement] of counsel there must exist exceptional circumstances." (Internal quotation marks omitted.) *State* v. *Crawley*, supra, 136.

The respondent argues that the court denied her motion for a continuance because she had eight different attorneys over the course of the case, the length of time the case had been pending and because her attorney was an experienced attorney. The trial transcript demonstrates that the reasons provided by the respondent are among the reasons stated by the court in expressing its reasoning for denying the respondent's motion for a continuance. These reasons, however, are among the factors that courts are permitted to consider when deciding a motion for a continuance. We are not persuaded, therefore, that the court abused its discretion in denying her motion for a continuance on these grounds.[16]

D

Motion to Open Judgments and Order New Trial

On June 15, 2012, the respondent filed a motion to open the judgments and order a new trial, to which the petitioner objected. On June 27, 2012, the court held a motion hearing, and on June 29, 2012, issued a memorandum of decision in which it denied the respondent's motion.

---

[16] Additionally, the record reflects that the respondent, while present in court at a prior hearing in December, 2011, was provided with several months' notice of the date of the trial and that it would proceed as scheduled.

The respondent claims that the court abused its discretion in denying her motion to open the judgments and order a new trial. Specifically, the respondent seeks to challenge Watson's testimony on the basis of fraud and alleges the existence of newly discovered evidence. The respondent first argues that she did not receive notice of the trial and then argues that Watson was not the social worker assigned to her case since February, 2012. The respondent's first argument amounts to no more than an attempt to reargue her first claim in this appeal that she did not receive notice, an assertion belied by the evidence in the record. This claim previously has been addressed in part I of this opinion and, therefore, will not be addressed further at this time. In her second argument, the respondent seeks to challenge Watson's testimony regarding when Watson became the social worker assigned to the respondent's case. The respondent, however, provides no support for this argument. Furthermore, the court's decision to credit Watson's testimony is a credibility determination that we cannot second-guess on appeal. See *State* v. *White*, 127 Conn. App. 846, 851, 17 A.3d 72, cert. denied, 302 Conn. 911, 27 A.3d 371 (2011).

The respondent also argues that there was newly discovered evidence that "was known to her" at the time of trial. The respondent's concession that the evidence was known to her at the time of the trial negates her characterization of the evidence as newly discovered. Therefore, this argument must fail. For the foregoing reasons, we find no merit in the respondent's claim that the court abused its discretion in denying her motion to open the judgments and order a new trial.

E

Motion to Compel Production

The respondent claims that the court abused its discretion in denying her postjudgment motion to compel production of any and all records held by the depart-

ment that pertained to her and her children. She argues that by denying her postjudgment motion to compel production the court denied her the opportunity properly to present the merits of her argument on appeal. We disagree.

"The granting or denial of a discovery requests rests in the sound discretion of the court." (Internal quotation marks omitted.) *Gach* v. *Franolich*, 10 Conn. App. 677, 682, 525 A.2d 525 (1987). "Practice Book § 13-14 (a) provides in relevant part that a trial court may, on [a] motion [to compel production], make such order as the ends of justice require. Consequently, the granting or denial of a discovery request rests in the sound discretion of the court . . . and can be reversed only if such an order constitutes an abuse of that discretion. The ultimate issue in our review is, therefore, whether the trial court reasonably could have concluded as it did." (Internal quotation marks omitted.) *Shaw* v. *Freeman*, 134 Conn. App. 76, 88–89, 38 A.3d 1231 (2012).

The respondent has failed to provide us with any reason that would lead us to believe that the court could not reasonably have concluded as it did in deciding her postjudgment motion to compel production. As a reviewing court we are limited to the record before the trial court. See *State* v. *Richard W.*, 115 Conn. App. 124, 135 n.6, 971 A.2d 810, cert. denied, 293 Conn. 917, 979 A.2d 493 (2009). Even if such a motion were proper pursuant to chapter 13 of the rules of practice, the respondent has failed to demonstrate how production of the requested records would have assisted her on appeal. We conclude, therefore, that the court did not abuse its discretion in denying the respondent's motion to compel production.

F

Motion to Modify Dispositions

The respondent claims that the court abused its discretion in denying her motion to modify the dispositions

of commitment of each of the children to the care, custody and control of the petitioner to protective supervision of each of the children by the petitioner in the home of the respondent. In essence, the respondent challenges the court's conclusions based on its findings regarding her level of rehabilitation and the best interest of the children. We are not persuaded.

Practice Book § 35a-16 provides in relevant part: "Motions to modify are dispositional in nature based on the prior adjudication, and the judicial authority shall determine whether a modification is in the best interests of the child[ren] . . . upon a fair preponderance of the evidence. . . ." "To determine whether a custodial placement is in the best interest of the child, the court uses its broad discretion to choose a place that will foster the child's interest in sustained growth, development, well-being, and in the continuity and stability of its environment. . . . We have stated that when making the determination of what is in the best interest of the child, [t]he authority to exercise the judicial discretion under the circumstances revealed by the finding is not conferred upon this court, but upon the trial court, and . . . we are not privileged to usurp that authority or to substitute ourselves for the trial court. . . . *A mere difference of opinion or judgment cannot justify our intervention. Nothing short of a conviction that the action of the trial court is one which discloses a clear abuse of discretion can warrant our interference.* . . . In determining whether there has been an abuse of discretion, the ultimate issue is whether the court could reasonably conclude as it did. . . . Further, we note that [g]reat weight is given to the judgment of the trial court because of [the court's] opportunity to observe the parties and the evidence. . . . *We do not examine the record to determine whether the trier of fact could have reached a conclusion other than the one reached.* . . . [O]n review by

this court, every reasonable presumption is made in favor of the trial court's ruling." (Citation omitted; emphasis in original; internal quotation marks omitted.) *In re Diamond J.*, 121 Conn. App. 392, 397–98, 996 A.2d 296, cert. denied, 297 Conn. 927, 998 A.2d 1193 (2010).

On June 27, 2010, the respondent filed a motion to modify disposition, in which she requested that the court modify its order committing the children to the custody of the petitioner to an order of protective supervision; she withdrew the motion on April 5, 2012. Eleven days later, on the first day of trial, the respondent reinstated her motion in order to present evidence in support of her motion. In allowing the respondent to reinstate her motion to modify the disposition from commitment to protective supervision, the court stated that the best interest of the children determination also would govern the disposition of the motion.

The respondent argues that she has rehabilitated to the degree that she can manage her life and the lives of her children. She also makes various arguments regarding the level of care that she is able to provide for her children. The respondent, however, fails to provide any reason for us to question the court's findings regarding her level of rehabilitation or the factual findings underlying the court's determination that termination of her parental rights is in the best interest of the children. Consequently, we have no legal basis on which to question the propriety of the court's denial of the respondent's motion to modify the disposition from commitment to protective supervision. We conclude, therefore, that the court did not abuse its discretion in denying the respondent's motion to modify disposition.

The judgments are affirmed.

In this opinion the other judges concurred.