### IN RE JONATHAN P. ET AL.*
(8221)

FOTI, LAVERY and CRETELLA, Js.

Argued May 11—decision released September 11, 1990

---

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 2026, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

*David J. Wenc,* for the appellant (respondent father).

*Mary-Anne Ziewacz Mulholland,* assistant attorney general, with whom, on the brief, were *Clarine Nardi Riddle,* attorney general, and *Susan T. Pearlman,* assistant attorney general, for the appellee (petitioner).

FOTI, J. The respondent father[1] is appealing the judgment of the trial court terminating his parental rights to three minor children rendered after petitions were brought by the department of children and youth services (DCYS) pursuant to General Statutes § 17-43a. He claims that the trial court improperly proceeded and heard testimony before he arrived in court. We agree and remand for further proceedings.

The following facts are uncontested and are relevant to the disposition of this appeal. The petitions submitted by DCYS allege abandonment, absence of parent-child relationships, and failure to rehabilitate. They are directed at both parents and their ability to care for their three children, Jonathan P., born April 4, 1983, Waddiel P., born October 12, 1985, and Daniel G., born October 20, 1986.[2] After DCYS obtained service on the respondent by publication, separate counsel was appointed for him, although his whereabouts were

---

[1] Both parents contested this petition for termination of parental rights, but only the father has appealed, and will be referred to herein as the respondent.

[2] The petitions also sought a waiver of the requirement that the alleged grounds had existed for at least one year because of the totality of the circumstances surrounding these children. General Statutes § 17-43a (b).

unknown. In addition, the court ordered that a psychological evaluation of the mother, who was incarcerated at the time, and the children be made by a Spanish-speaking psychologist. On the initial date set for trial, the father, who had been located in the custody of the department of correction, appeared with counsel and requested that he be included in the family's psychological evaluation. The court granted the continuance. Before the next assigned trial date, DCYS amended the petitions to incorporate the circumstances underlying the alleged grounds for terminating the rights of both parents. The trial was delayed a second time at the request of the mother's counsel and did not begin until more than nine months after the petitions were filed.

On the first day of trial, the mother, her counsel, counsel for the children, counsel for DCYS and the respondent's counsel came before the court. The respondent's absence was noted on the record by the court. Before the proceedings began, the respondent's counsel was excused so that she could phone the department of correction to determine the respondent's whereabouts. In the absence of the respondent's counsel, the court examined the file and determined that a habeas writ had been issued to enable the respondent to be in court that day. Before the respondent's counsel returned to the courtroom, the court read the names of the mother and all counsel who were present into the record. Although the respondent's and his counsel's absences were again noted, the court chose to proceed, stating "I really don't like to keep expert witnesses waiting . . . . [I]t isn't as important to have [the respondent] here because he really can't second-guess the evaluator, but I think we probably have to have permission of [his counsel]." Despite that probability, the court proceeded without first obtaining the

permission of the respondent's attorney. The court commenced the trial by calling, as its own witness, Julia Ramos Grenier, a psychologist, who had conducted the family's psychological evaluation.

When the respondent's counsel returned to the courtroom she was informed by the court that Ramos Grenier had been called and was testifying. The respondent's counsel voiced no objection, and advised the court that the respondent was on his way.

After the respondent's counsel returned to the courtroom, but before the respondent arrived, Ramos Grenier's entire report, including the evaluation of the respondent, was entered as a full exhibit. In addition, Ramos Grenier testified as to the respondent's paternal capabilities four times. On each occasion the respondent's counsel had the opportunity to object to the questioning, but did not.

The respondent arrived in the courtroom after an extensive cross-examination of Ramos Grenier by his attorney. The transcript indicates that he was present for the remaining seven transcript pages of Ramos Grenier's testimony.[3] The court granted the respondent's counsel leave to recall and reexamine the witness if she thought it was necessary now that she could confer with her client. When the respondent arrived, however, his counsel did not seek a recess to confer with him and neglected either to recall or to reexamine the witness any further.

The respondent attended the remainder of the trial. He testified in his own behalf and submitted a posttrial brief that did not raise the issue of his absence during Ramos Grenier's testimony.

---

[3] The respondent was not present during the first thirty-three pages of transcript. In all, he missed twenty-four pages of Ramos Grenier's thirty-one page testimony.

As a general rule, a claim that is not raised at trial cannot be raised for the first time on appeal. *State* v. *Scott,* 10 Conn. App. 347, 350, 522 A.2d 1245, cert. denied, 204 Conn. 804, 528 A.2d 1152 (1987). In accordance with Practice Book § 4185,[4] however, this court may notice plain error[5] in the interest of justice; *State* v. *Eric T.,* 8 Conn. App. 607, 614, 513 A.2d 1273 (1986); or where the court and counsel have overlooked a clearly applicable statute; *Hartford Federal Savings & Loan Assn.* v. *Tucker,* 181 Conn. 607, 609, 436 A.2d 1259 (1980); or a rule of practice is ignored. *Lampasona* v. *Jacobs,* 7 Conn. App. 639, 641, 509 A.2d 1089 (1986).

We conclude that the plain error doctrine must be invoked in the present case because the trial court ignored the mandatory language of state statutes and the rules of practice, and because the respondent was denied his right to due process.

Before a hearing on the termination of a respondent's parental rights can commence, the court is obligated under the mandatory language of Practice Book § 1041 (2)[6] to determine that all legally necessary par-

---

[4] Practice Book § 4185 provides in pertinent part: "The [appellate] court may in the interests of justice notice plain error not brought to the attention of the trial court."

[5] The respondent acknowledges that the issue of his absence was not raised at trial, but seeks review under the exceptional circumstances doctrine of *State* v. *Golding,* 213 Conn. 233, 239–40, 567 A.2d 823 (1989). While a father's interest in retaining parental rights with respect to his children is constitutionally protected; *In re Juvenile Appeal (Docket No. 10155),* 187 Conn. 431, 435, 446 A.2d 808 (1982); and the *Golding* bypass rule has been determined to apply to noncriminal cases; *Hurtado* v. *Hurtado,* 14 Conn. App. 296, 300, 541 A.2d 873 (1988); our finding of plain error leaves us with no reason to apply a *Golding* analysis.

[6] Practice Book § 1041 (2) provides: "The court shall first determine that all parties legally necessary are present and that the rules governing service have been complied with, and shall note these facts for the record. The court shall then inform the parties of the substance of the petition."

ties are present and to note the same for the record. A parent is a legally necessary party in a termination proceeding; General Statutes § 45-61d (b) (1);[7] Practice Book § 1023 (*l*) (3);[8] and has a statutory right of confrontation in such proceedings. General Statutes § 46b-135 (b).[9]

The trial court in the present case did not follow the mandates of our statutes and rules of practice when it commenced the termination proceeding in the absence of the respondent and his counsel. It is in the interest of justice to ensure that any parent caught in the throes of a termination proceeding be present, or at least represented by counsel, from the beginning of the hearing. Because a parent is a necessary party to a termination hearing, it was clearly improper for the court to proceed in the absence of the respondent and his counsel. Furthermore, it should be emphasized that, under the circumstances of this case, it would have been improper for the court to proceed before the respondent arrived at court, even if his counsel had been in the courtroom at the time.

The petitioner's reliance on the outcome of *In re Juvenile Appeal (Docket No. 10155),* 187 Conn. 431, 446 A.2d

---

[7] General Statutes § 45-61d (b) (1) provides: "The court shall cause notice of the hearing to be given to the following persons as applicable: (1) The parent or parents of the minor child, including any parent who has been removed as guardian on or after October 1, 1973, under section 45-43."

[8] Practice Book § 1023 (*l*) provides in part: " 'Parties' includes . . . . (3) 'Legal party at interest': Any person, including a parent, whose legal relationship to the matter pending before the court is of such a nature and kind as to mandate the receipt by him of proper legal notice as a condition precedent to the establishment of the court's jurisdiction."

[9] General Statutes § 46b-135 (b) provides: "At the commencement of any proceeding on behalf of a neglected, uncared-for, or dependent child or youth, the parent or parents or guardian of the child or youth shall have the right to counsel, and shall be so informed by the judge, and that if they are unable to afford counsel, counsel will be provided for them, and such counsel and such parent or guardian of the child or youth shall have the rights of confrontation and cross-examination."

808 (1982), to support its assertions that the respondent was adequately represented at the hearing is misplaced. While the rule of law set forth in that case applies here, the facts, and consequently the outcome, are clearly distinguishable. In that case, the father, whose attorney was present throughout the hearing, was incarcerated in California. He asked the court to postpone the termination proceedings until he was released at some time in the indefinite future and the court properly denied his request. In the present case, the respondent was incarcerated in Connecticut and was on his way to the courthouse after a writ of habeas corpus had been issued to ensure his presence at the hearing.

As noted above, the trial court also denied the respondent his right to due process. The principles of due process, as determined by the balancing test set forth in *Mathews* v. *Eldridge,* 424 U.S. 319, 334, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976), apply to termination cases. *In re Juvenile Appeal (Docket No. 10155),* supra, 435. In applying this test, this court must consider (1) the private interests at stake, (2) the probable value of additional safeguards, and (3) the risk of improperly denying the respondent his interests in the child through the procedure used. Id., 435–36.

The first two criteria of the balancing test are easily fulfilled by the case at hand. First, because a parent's rights are unquestionably constitutionally protected interests of high magnitude; id., 440; the respondent's private interest in retaining his parental rights is clearly compelling and constitutionally protected. Id., 436. The second criterion need not come into play in this case because the respondent does not ask us to enforce "additional" safeguards, but rather he asks us to afford him the benefit of the safeguards already in place in our statutes and rules of practice.

The third prong of this balancing test, questioning whether the respondent was denied his protected interest in the child by the procedure used, is governed by two cases recently decided by this court. In *Rozbicki* v. *Huybrechts,* 22 Conn. App. 131, 576 A.2d 178 (1990), we held that a plaintiff in a civil action has the right to be present during jury selection because it is an integral part of the trial process and the plaintiff possesses unique knowledge of the case that may aid his attorney in determining what tactical and strategical moves should be made. Id., 134.

In the matter of *In re Christopher A.,* 22 Conn. App. 656, 578 A.2d 1092 (1990), we held that a DCYS social worker had the right to be present, at counsel table, during the questioning of witnesses in spite of the fact that the attorney representing the social worker was present, that the social worker was a witness in the case, and that all of the nonparty witnesses were sequestered so as not to influence each other's testimony.

We conclude that the respondent's spontaneous input into his counsel's cross-examination and recross-examination of Ramos Grenier was of no lesser importance than the plaintiff's right to be present during the voir dire of the jury this court found in *Rozbicki* v. *Huybrechts,* supra, and that a father's right to be present during a termination proceeding cannot be placed below the right of a DCYS social worker to be present as found in *In re Christopher A.,* supra.

In the present case, the court should not have proceeded without the respondent's presence and should not have commenced the hearing in the absence of the respondent's counsel.

The judgment is reversed in part and the case is remanded for a new hearing as to the respondent father.

In this opinion the other judges concurred.