******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# IN RE JANELEAH I.*
## (AC 48460)

Seeley, Westbrook and Norcott, Js.

*Syllabus*

The respondent mother appealed from the trial court's judgment terminating her parental rights with respect to her minor child. The mother claimed, inter alia, that the court violated her right to procedural due process under the fourteenth amendment to the United States constitution by conducting the trial on the termination petition filed by the petitioner, the Commissioner of Children and Families, in her absence. *Held*:

The trial court did not violate the respondent mother's right to procedural due process by conducting the termination of parental rights trial in her absence, this court having concluded that the trial court's action was not fundamentally unfair under the balancing test set forth in *Mathews* v. *Eldridge* (424 U.S. 319) and, thus, that the mother's unpreserved constitutional claim failed to satisfy the third requirement of *State* v. *Golding* (213 Conn. 233).

This court determined that the trial court's failure to make the statutorily (§ 17a-112 (k) (7)) mandated written findings, by clear and convincing evidence, as to whether the unreasonable conduct of another person or the respondent mother's economic circumstances prevented the mother from maintaining a meaningful relationship with the child required reversal of the judgment with respect to the trial court's determination in the dispositional phase of the proceeding that it was in the child's best interest to terminate the mother's parental rights, as the criteria set forth in § 17a-112 (k) must be strictly complied with because the mother's fundamental right to parent the child was at stake.

Argued May 27—officially released July 9, 2025**

---

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79a-12, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the court.

Moreover, in accordance with federal law; see 18 U.S.C. § 2265 (d) (3) (2018), as amended by the Violence Against Women Act Reauthorization Act of 2022, Pub. L. No. 117-103, § 106, 136 Stat. 49, 851; we decline to identify any person protected or sought to be protected under a protection order, protective order, or a restraining order that was issued or applied for, or others through whom that person's identity may be ascertained.

** July 9, 2025, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

*Procedural History*

Petition by the Commissioner of Children and Families to terminate the respondents' parental rights with respect to their minor child, brought to the Superior Court in the judicial district of New Haven, Juvenile Matters, and tried to the court, *Dawson, J.*; judgment terminating the respondents' parental rights; thereafter, the court denied the respondent mother's motion to open the judgment terminating her parental rights, and the respondent mother appealed to this court. *Reversed in part*; *further proceedings*.

*Benjamin M. Wattenmaker*, assigned counsel, for the appellant (respondent mother).

*Nisa J. Khan*, assistant attorney general, with whom, on the brief, was *William Tong*, attorney general, for the appellee (petitioner).

*Opinion*

WESTBROOK, J. The respondent mother, Desiree I., appeals from the judgment of the trial court rendered in favor of the petitioner, the Commissioner of Children and Families, terminating her parental rights with respect to her minor child, Janeleah.[1] On appeal, the respondent claims that the court (1) violated her rights to procedural due process under the fourteenth amendment to the United States constitution by conducting the termination of parental rights trial in her absence and (2) improperly failed to make written, mandatory findings as to the seven best interest factors set forth in General Statutes § 17a-112 (k).[2] We disagree with

---

[1] The court also terminated the parental rights of the respondent father, Joshua V., who is not involved in this appeal. Accordingly, all references to the respondent in this opinion are to the mother.

[2] Although the respondent, in her principal appellate brief, addresses her procedural due process claim second, we will address that claim first because, if she prevails, she would be entitled to a new trial rather than a new dispositional proceeding.

the respondent's first claim but agree with her second claim.[3] Accordingly, we reverse the court's judgment with respect to its dispositional determination that termination of the respondent's parental rights was in Janeleah's best interest and remand the case for a new dispositional hearing.

The following facts, which either were found by the trial court or are undisputed in the record, are relevant to the respondent's appeal. The Department of Children and Families (department) first became involved with Janeleah when she was born in August, 2018.[4] On July 14, 2020, the respondent's then boyfriend called the police and reported that there had been a physical altercation between him and the respondent. When an officer arrived at the scene, the respondent was not there, but her boyfriend reported that she had punched him twice in the back of the head while he was holding Janeleah. Afterward, the trial court granted a full no contact order with respect to the respondent and her boyfriend. On October 5, 2021, the police received a report from a bystander that a physical altercation was taking place on the street. When the police arrived, they observed that the respondent was "out of control and trying to fight everyone outside of her then boyfriend" in the presence of Janeleah. The respondent was arrested and charged with violation of a protective order and breach of the peace. The respondent was ultimately released on probation.

On March 2, 2023, the department received a call from the respondent's probation officer, alleging that

---

[3] The attorney for the minor child filed a statement adopting the brief of the petitioner.

[4] The record reveals the following: "[The respondent] [has] a history with the [d]epartment dating back to 2018 for concerns of physical neglect, emotional neglect and sexual abuse [and exploitation] [by a] parent. There have been six prior reports involving [the respondent] with no substantiations and three reports involving [the father] with two substantiations of sexual abuse [and exploitation]. The family received ongoing services from [August, 2018, until February, 2019]."

the respondent had violated the terms of her probation by testing positive for fentanyl. On March 10, 2023, the petitioner filed a neglect petition and sought an order of temporary custody on Janeleah's behalf, which the court granted ex parte that same day. The court also ordered that the respondent comply with certain specific steps to facilitate her reunification with Janeleah. The court subsequently sustained the order of temporary custody. On August 22, 2023, the court adjudicated Janeleah neglected, committed her to the care and custody of the petitioner, and ordered final specific steps for the respondent.[5]

On February 8, 2024, the court approved a permanency plan that called for the termination of parental rights. On May 16, 2024, the petitioner filed the underlying petition for termination of the respondent's parental rights, alleging that the respondent had failed to achieve a sufficient degree of personal rehabilitation within the meaning of § 17a-112 (j) (3) (B). On August 1, 2024, the respondent was present at a preliminary hearing during which the court scheduled a trial on the petition to take place on November 6 and 13, 2024.

On November 6, 2024, the court, *Dawson, J.*, commenced the trial on the petition for the termination of the respondent's parental rights. The respondent, who was represented by counsel, was not present. The respondent's counsel, Attorney Peter K. Manko, was

---

[5] The trial court ordered the respondent, inter alia, to keep all appointments with the department, take part in counseling and make progress toward identified treatment goals, submit to a substance abuse evaluation and follow recommendations for treatment, submit to random drug testing, abstain from using illegal drugs, cooperate with court-ordered evaluations and testing, maintain adequate housing and income, cooperate with protective orders, complete a domestic violence program, cooperate with the child's therapy, visit the child as often as permitted, sign releases allowing the department to communicate with service providers, and sign releases allowing the attorney for the minor child and the guardian ad litem to review the child's medical and educational records.

present, as well as the petitioner's counsel, Attorney Renee Bevacqua-Bollier; the father's counsel, Attorney Jennifer M. Celentano; and the petitioner's witnesses, Melissa Hodges, a social worker for the department, and Ines Schroeder, an expert in clinical and forensic psychology. The following colloquy took place at the beginning of trial:

"[Attorney Bevacqua-Bollier]: I would ask that the court . . . note the absence of [the respondent], and I will be proceeding in absentia.

"[The Court]: Okay. So, the [respondent] [was] . . . served and advised, I believe, on June [11, 2024]. Do we know that [she] had notice of today's date?

"[Hodges]: Yes. . . . I reached out to [the respondent] on Monday reminding her about today [and] the time, and I also reached out again this morning. No response either time. I reached out to the foster parent, because [she's] a fictive kin, asking if she's heard from [the respondent], and she said she hadn't heard from [the respondent] since Monday and all she talked about was getting . . . the child's school picture . . . .

"[The Court]: Okay. Can I see the file? I . . . want to make sure that [she] . . . [was] served. Counsel was appointed for [the respondent]. . . . [The respondent] was present on August [1, 2024] . . . [a]nd this date was sent or at least confirmed at that time. Anyone else want to be heard on the [petitioner's] request to default the [respondent]?

"[Attorney Celentano]: No, Your Honor.

"[Attorney Manko]: No, Your Honor. . . .

"[Attorney Bevacqua-Bollier]: I'm actually not asking for a default, Your Honor. I'm just asking that Your Honor note [the respondent's] absence, and I intend to proceed with evidence in absentia.

"[The Court]: Okay. All right. So, it's clear to the court that the [respondent] knew that this was happening. [She] [was] present in August . . . [when] this date was set. So, the [petitioner] may proceed."[6]

The court thereafter heard testimony from Schroeder and Hodges. The court admitted six exhibits into evidence, including the August 22, 2023 specific steps ordered by the court with respect to the respondent, the August 22, 2023 specific steps ordered by the court with respect to the father, a social study conducted by the department in support of the termination of parental rights, Schroeder's curriculum vitae, a psychological consultation report prepared by Schroeder, and a narrative prepared by Hodges.

On November 26, 2024, the court issued a memorandum of decision and rendered judgment terminating the respondent's parental rights. In the adjudicatory portion of its decision,[7] the court found by clear and convincing evidence that (1) the department had made

---

[6] In addition, the following colloquy occurred during Bevacqua-Bollier's direct examination of Hodges concerning the respondent's absence at trial:

"[Attorney Bevacqua-Bollier]: Miss Hodges, can you tell the court the efforts that you made to notify [the respondent] of today's proceedings?

"[Hodges]: I reached out to [the respondent] on Monday . . . telling her about today's court date, the time, the address, to be on time, [and] that court started sharply at 9 in the morning. I did not get a response from her. I reached out to her again this morning with no response. I reached out to the foster parent because it's a fictive kin placement, and she sometimes has contact with [the respondent], and she said she last . . . talked to her on Monday, but it was not about court; it was just about school pictures. . . .

"[Attorney Bevacqua-Bollier]: Did you check to see whether [the respondent] was incarcerated?

"[Hodges]: Yes. I did a [Department of Correction] check this morning, and neither one of [the parents] are incarcerated."

[7] "A hearing on a petition to terminate parental rights consists of two phases, adjudication and disposition. . . . If the trial court determines that a statutory ground for termination exists, it proceeds to the dispositional phase. In the dispositional phase, the trial court determines whether termination is in the best interest of the child." (Internal quotation marks omitted.) *In re Matthew W.*, 231 Conn. App. 21, 30 n.4, 331 A.3d 1239 (2025).

reasonable efforts to locate the respondent and to reunify her with Janeleah, (2) the respondent was unwilling or unable to benefit from reunification services, and (3) the respondent had failed to achieve a sufficient degree of personal rehabilitation within the meaning of § 17a-112 (j) (3) (B).[8]

In the dispositional portion of its decision, the court noted the seven mandatory written findings set forth in § 17a-112 (k)[9] that it was required to make but did

---

[8] General Statutes § 17a-112 (j) provides in relevant part: "The Superior Court, upon notice and hearing . . . may grant a petition filed pursuant to this section if it finds by clear and convincing evidence that (1) the Department of Children and Families has made reasonable efforts to locate the parent and to reunify the child with the parent . . . unless the court finds in this proceeding that the parent is unable or unwilling to benefit from reunification efforts . . . (2) termination is in the best interest of the child, and (3) . . . (B) the child (i) has been found by the Superior Court or the Probate Court to have been neglected, abused or uncared for in a prior proceeding, or (ii) is found to be neglected, abused or uncared for and has been in the custody of the commissioner for at least fifteen months and the parent of such child has been provided specific steps to take to facilitate the return of the child to the parent . . . and has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child . . . ."

[9] General Statutes § 17a-112 (k) provides: "Except in the case where termination of parental rights is based on consent, in determining whether to terminate parental rights under this section, the court shall consider and shall make written findings regarding: (1) The timeliness, nature and extent of services offered, provided and made available to the parent and the child by an agency to facilitate the reunion of the child with the parent; (2) whether the Department of Children and Families has made reasonable efforts to reunite the family pursuant to the federal Adoption and Safe Families Act of 1997, as amended from time to time; (3) the terms of any applicable court order entered into and agreed upon by any individual or agency and the parent, and the extent to which all parties have fulfilled their obligations under such order; (4) the feelings and emotional ties of the child with respect to the child's parents, any guardian of such child's person and any person who has exercised physical care, custody or control of the child for at least one year and with whom the child has developed significant emotional ties; (5) the age of the child; (6) the efforts the parent has made to adjust such parent's circumstances, conduct, or conditions to make it in the best interest of the child to return such child home in the foreseeable future, including, but not limited to, (A) the extent to which

not indicate what, if any, facts satisfied this requirement. The court found, by clear and convincing evidence, that the termination of the respondent's parental rights was in the best interest of the child. The court rendered judgment terminating the respondent's parental rights and appointed the petitioner as Janeleah's statutory parent.

On December 13, 2024, the respondent filed a motion to open the judgment terminating her parental rights. In her motion, the respondent alleged that the termination of her parental rights was not in Janeleah's best interest and that she had been absent from trial because (1) she did not have notice of the trial date, (2) she had a work conflict on the day of trial, and (3) she lacked transportation from Hartford, where she resides, to New Haven, where the trial was held. On January 2, 2025, the court held a hearing on the respondent's motion. At the hearing, the respondent stated: "I had work and an appointment [the day of trial]. . . . I totally forgot that I had court. I received a text message . . . the morning of court when I was already at my appointment." The court subsequently denied the respondent's motion on the record. It stated in relevant part: "[T]here was a hearing on August [1, 2024]. At that time . . . there were two trial dates scheduled: November [6], and November [13]. [The respondent] was present. She received that date on August [1]. . . . There were three months between when the trial date was selected and when the trial date occurred. [The

the parent has maintained contact with the child as part of an effort to reunite the child with the parent, provided the court may give weight to incidental visitations, communications or contributions, and (B) the maintenance of regular contact or communication with the guardian or other custodian of the child; and (7) the extent to which a parent has been prevented from maintaining a meaningful relationship with the child by the unreasonable act or conduct of the other parent of the child, or the unreasonable act of any other person or by the economic circumstances of the parent."

respondent] had plenty of time to make arrangements to get out of work and to find transportation if that was an issue. Additionally, if [the respondent] could not make arrangements to get out of work, she could have filed a request for a continuance. That was not done. . . . I'm going to deny this motion." This appeal followed. Additional facts will be set forth as necessary.

I

The respondent first claims that the trial court violated her rights to procedural due process under the fourteenth amendment to the United States constitution[10] by conducting the termination of parental rights trial in her absence. We disagree.

The respondent acknowledges that this claim is unpreserved and seeks review pursuant to in *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), as modified by *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015). "Under *Golding* review, which applies in both criminal and civil cases . . . [a respondent] can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation . . . exists and . . . deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. . . . The first two [prongs of *Golding*] involve a determination of whether the claim is reviewable; the second two . . . involve a determination of whether the [party claiming error] may prevail." (Citations omitted; emphasis in original;

---

[10] The fourteenth amendment to the United States constitution provides in relevant part that no state shall "deprive any person of life, liberty or property, without due process of law . . . ." U.S. Const., amend. XIV, § 1.

internal quotation marks omitted.) *In re Skye B.*, 230 Conn. App. 725, 737, 331 A.3d 769, cert. denied, 351 Conn. 922, 333 A.3d 105 (2025). We agree with the respondent that the record is adequate to review her claim and that it is of constitutional magnitude, alleging the deprivation of her procedural due process rights. For the reasons that follow, however, we disagree with the respondent that a constitutional violation exists that deprived her of her right to a fair trial.

The following legal principles are relevant to our analysis under the third prong of *Golding*. "The United States Supreme Court established a three-pronged balancing test in *Mathews* [v. *Eldridge*, 424 U.S. 319, 335, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976)] to determine what safeguards the federal constitution requires to satisfy procedural due process. Courts apply that balancing test when the state seeks to terminate parental rights. . . . The three factors to be considered are (1) the private interest that will be affected by the state action, (2) the risk of an erroneous deprivation of such interest, given the existing procedures, and the value of any additional or alternate procedural safeguards, and (3) the government's interest, including the fiscal and administrative burdens attendant to increased or substitute procedural requirements. . . . The bottom-line question is whether the denial rendered the [proceeding] fundamentally unfair in view of the *Mathews* factors." (Citation omitted; internal quotation marks omitted.) *In re Na-Ki J.*, 222 Conn. App. 1, 8, 303 A.3d 1206, cert. denied, 348 Conn. 929, 304 A.3d 860 (2023). Our balancing of the three *Mathews* factors in the present case leads us to conclude that the court's decision to proceed with trial in the respondent's absence did not render the termination proceeding fundamentally unfair.

As to the first factor of the *Mathews* balancing test, "the respondent has an important, constitutionally protected interest in preserving [her] parental rights."

(Internal quotation marks omitted.) Id. Accordingly, the first *Mathews* factor weighs in favor of the respondent.

"The second factor of *Mathews* addresses the risk of an erroneous deprivation and the probable value of additional or substitute procedural safeguards." Id., 9. The respondent argues that the trial court created a substantial risk of an erroneous deprivation because she was not afforded " 'the benefit of the safeguards already in place in our statutes . . . .' " Specifically, she argues that (1) she did not receive adequate notice of the trial date, and (2) the court improperly proceeded with trial in her absence. We are not persuaded.

We first consider whether the respondent was provided with adequate notice of the trial date. "[T]he essence of due process is the requirement that a person in jeopardy of serious loss [be given] notice of the case against him and [an] opportunity to meet it. . . . It is equally fundamental that the right to notice . . . must be granted at a meaningful time and in a meaningful manner. . . . Due process requires notice that would be deemed constitutionally adequate in a civil or criminal proceeding. . . . Notice, to comply with due process requirements, must be given sufficiently in advance of scheduled court proceedings so that reasonable opportunity to prepare will be afforded . . . ." (Citations omitted; internal quotation marks omitted.) *In re Jason M.*, 140 Conn. App. 708, 716–17, 59 A.3d 902, cert. denied, 308 Conn. 931, 64 A.3d 330, cert. denied sub nom. *Charline P.* v. *Connecticut Dept. of Children & Families*, 571 U.S. 1079, 134 S. Ct. 701, 187 L. Ed. 2d 564 (2013).

In the present case, the record reveals that the respondent had notice of the trial date because she was present at the August 1, 2024 hearing when the court scheduled trial to begin on November 6, 2024. See id., 718 (respondent had notice where "the respondent and

her attorney were present in court when the court established the dates of trial"). The respondent does not dispute that she was informed of the trial date at the August 1, 2024 hearing. Rather, she stated at the hearing on her motion to open the judgment terminating her parental rights that she merely *forgot* about the trial date. Additionally, Hodges attempted to contact the respondent twice to remind her of the date, time, and location of the trial. Hodges also contacted the foster family in a further attempt to reach the respondent regarding the trial date. The respondent did not respond to Hodges nor did she inform her counsel or the court that she would not be present on November 6, 2024. The respondent, therefore, had adequate notice of the trial date.

We next consider whether conducting the trial in the respondent's absence created a risk of erroneous deprivation. We first note that the trial court did not render a default judgment against the respondent in her absence. Rather, the court held a trial on the merits, requiring the petitioner to prove by clear and convincing evidence not only the ground for termination but that it was in Janeleah's best interest for the respondent's parental rights to be terminated. See *In re Na-Ki J.*, supra, 222 Conn. App. 9 (court provided procedural safeguards in respondent's absence by, inter alia, holding trial on merits rather than rendering default judgment).

Additionally, "[t]his court has stated that [i]t is in the interest of justice to ensure that any parent caught in the throes of a termination proceeding be present, *or at least represented by counsel*, from the beginning of the hearing. . . . There can be, however, circumstances in a termination hearing in which the mere presence, alone, of a respondent's counsel, is not sufficient for a court to proceed in the respondent's

absence." (Citation omitted; emphasis in original; internal quotation marks omitted.) *In re Candids E.*, 111 Conn. App. 210, 217, 958 A.2d 229 (2008).

In the present case, the respondent was represented by counsel during the entirety of the trial, and she has not pointed to any circumstances indicating that her counsel failed to adequately represent her interests in her absence. Indeed, the respondent's counsel cross-examined Hodges, eliciting testimony that the respondent consistently had visited Janeleah, was engaged during the visits, and had positive interactions with Janeleah. The respondent's counsel also delivered a closing argument in which he highlighted positive aspects of the respondent's parenting efforts. Although the respondent contends that, if she had been present, she would have testified about her "compliance with her specific steps," she was absent "on the basis of matters solely within [her] control . . . ." *In re Lukas K.*, 120 Conn. App. 465, 476, 992 A.2d 1142 (2010); see id. (court did not deprive respondent of right to procedural due process by conducting trial in his absence because he was aware "that he would not physically be able to attend the trial . . . [and] failed to notify the court, failed to request another continuance in advance of trial and failed to pursue any pretrial discovery options"), aff'd, 300 Conn. 463, 14 A.3d 990 (2011). Moreover, the respondent does not "explain with any specificity what additional evidence or testimony she would have introduced," had the court not proceeded with trial in her absence, "that would have *rebutted the petitioner's evidence*." (Emphasis added.) *In re Na-Ki J.*, supra, 222 Conn. App. 10. Nor does the respondent claim on appeal that the court's findings of fact were clearly erroneous.

The respondent relies on this court's decision in *In re Jonathan P.*, 23 Conn. App. 207, 579 A.2d 587 (1990), to support her argument that the trial court should not have proceeded with trial in her absence. In that case,

at the beginning of trial, the respondent's counsel left the courtroom to call the respondent, who was absent. Id., 209. While the respondent's counsel was out of the courtroom, the court proceeded with trial by calling an expert witness to testify. Id., 209–10. When the respondent's counsel returned to the courtroom to advise the court that the respondent was on his way, the expert had already begun testifying. Id., 210. Trial continued in the respondent's absence, and, when he arrived, his counsel had already extensively cross-examined the expert witness. Id. On appeal, this court concluded that the trial court had violated the respondent's procedural due process rights "when it commenced the termination proceeding in the absence of the respondent *and his counsel*. . . . Furthermore . . . *under the circumstances of this case*, it would have been improper for the court to proceed before the respondent arrived at court, even if his counsel had been in the courtroom at the time." (Emphasis added.) Id., 212. This court has explained that "[t]he respondent's due process rights were violated in [*In re Jonathan P.*] because the respondent, who was incarcerated, *was prevented from participating in the termination of parental rights trial on the basis of state sanctioned action*. . . . [T]he respondent had not been transported by the [D]epartment of [C]orrection to court even though a habeas writ had been issued for him to be present that morning." (Citation omitted; emphasis added.) *In re Tremaine C.*, 117 Conn. App. 521, 532, 980 A.2d 317, cert. denied, 294 Conn. 920, 984 A.2d 69 (2009).

The present case is distinguishable from *In re Jonathan P.* Here, as we have previously stated, the respondent was represented by counsel during the entirety of the trial. Additionally, in *In re Jonathan P.*, the *state* was responsible for the respondent's absence at the start of trial, and the trial court was aware that the respondent was on his way when it proceeded with

trial in his absence. In the present case, however, the respondent was responsible for her own absence at trial. Moreover, Hodges had attempted to contact the respondent on the morning of trial and received no response from her. The court, therefore, had no indication that the respondent intended to be present for trial or when she would be available. Thus, because the respondent had notice of the trial date, received a trial on the merits, and was adequately represented by counsel during the trial, we conclude that the court adhered to all applicable procedural safeguards in conducting trial in the respondent's absence.[11]

[11] We note that the trial court provided a hearing on the respondent's motion to open the judgment terminating her parental rights. "It is well settled that a party who has filed a motion to open has the burden of showing (1) reasonable cause, or that a good cause of action or defense in whole or in part existed at the time of the rendition of the judgment [she seeks to open] and (2) that [she] was prevented by mistake, accident or other reasonable cause from . . . making the defense. General Statutes § 52-212 (a). It is thus clear that to prevail on a motion to open, two things must occur. There must be a showing that (1) a good defense, the nature of which must be set forth, existed at the time judgment was rendered, and (2) the party seeking to set aside the judgment was prevented from making that defense because of mistake, accident or other reasonable cause. . . . Since the conjunctive and meaning in addition to is employed between the parts of the two prong test, both tests must be met. . . . The manifest purpose of a motion to open . . . is to provide a mechanism by which a defaulted party has an opportunity to be heard." (Citation omitted; internal quotation marks omitted.) *In re Jaelynn K.-M.*, 229 Conn. App. 371, 385, 327 A.3d 1013 (2024), cert. denied, 351 Conn. 904, 329 A.3d 239 (2025).

On appeal, the respondent does not challenge the trial court's denial of her motion to open. Nevertheless, even if the respondent could establish the first prong of § 52-212 (a), she cannot establish that she was prevented by mistake, accident, or other reasonable cause from making a defense because, despite having actual notice of the trial date, she failed to inform her counsel, the department, or the court that she was unable to be present that day. See *In re Skylar F.*, 191 Conn. App. 200, 212, 215 A.3d 750 (2019) (court properly denied motion to open judgment terminating parental rights because "it is the burden of the respondent to keep the court, his attorney and the department informed of his whereabouts and his intentions with respect to exercising responsibility for his child"); *In re Ilyssa G.*, 105 Conn. App. 41, 49, 936 A.2d 674 (2007) ("[r]egardless of whether it was intentional or the result of negligence, the respondent's failure to keep the court, the department and his attorney informed of his whereabouts does not qualify

In light of the foregoing, we conclude that the trial court did not create an unreasonable risk of an erroneous deprivation of the respondent's parental rights.[12] Thus, the second *Mathews* factor weighs in favor of the petitioner.

The final *Mathews* factor is "the government's interest in the termination proceeding, which is twofold. First, the state has a fiscal and administrative interest in lessening the cost involved in termination proceedings. . . . Second, as parens patriae, the state is also interested in the accurate and speedy resolution of termination litigation in order to promote the welfare of the affected child." (Internal quotation marks omitted.) *In re Na-Ki J.*, supra, 222 Conn. App. 11–12. The respondent argues that the third *Mathews* factor "does not weigh heavily in the [petitioner's] favor" because continuing the trial "until [she] was able to attend would not materially or substantially increase the government's fiscal and administrative burdens. Nor would such a delay compromise the government's interest in the well-being of the child." We are not persuaded.

In the present case, a continuance would have caused greater fiscal and administrative burdens on both the court system and the parties, as the trial on the petition to terminate the respondent's parental rights would

for purposes of opening a default judgment as a mistake, accident or other reasonable cause that prevented the respondent from presenting a defense"), cert. denied, 285 Conn. 918, 943 A.2d 475 (2008). Thus, the respondent had an additional opportunity to be heard at the motion to open hearing, thereby reducing the risk of an erroneous deprivation of her interests, but she failed to meet her burden of establishing that the judgment against her should be opened.

[12] To the extent the respondent argues that the trial court should have provided "the *additional safeguard* of a short continuance of the trial until [she] was able to attend"; (emphasis added); we decline to consider whether a continuance would have been a valuable additional procedural safeguard because the respondent failed to request a continuance and we have concluded that the court properly proceeded with trial in her absence.

have been delayed, despite the fact that the parties were present and ready to proceed with trial on the day the respondent was absent. See *In re Elena M.*, 232 Conn. App. 221, 238,    A.3d    (2025) (continuance "would have caused greater fiscal and administrative burdens" because trial "would have been extended, despite the fact that the parties were present and ready to proceed with trial on the day the respondent moved for the continuance"). Delaying the trial, therefore, would have resulted in "the very economic and administrative burdens on resources considered by [the third *Mathews*] prong . . . ." (Internal quotation marks omitted.) *In re Na-Ki J.*, supra, 222 Conn. App. 12; see also *In re Matthew P.*, 153 Conn. App. 667, 680, 102 A.3d 1127 ("[i]n light of the fact that all party representatives and the petitioner's witnesses were present on the first day of trial, we conclude that delaying the proceeding by granting the continuance would have resulted in the very economic and administrative burdens on resources considered by this prong" of *Mathews* test), cert. denied, 315 Conn. 902, 104 A.3d 106 (2014).

Additionally, the state's interest would have been adversely impacted by a continuance due to the nature of the proceeding, namely, the termination of parental rights with respect to a child. "[I]t is in the government's interest, as parens patriae, to resolve this case as expeditiously as possible, as the well-being of [Janeleah] is left in limbo by ongoing proceedings." *In re Elena M.*, supra, 232 Conn. App. 239. This court has explained that, "because of the psychological effects of prolonged termination proceedings on young children, time is of the essence. Any significant delay would undermine the state's important interest in protecting the welfare of children." (Internal quotation marks omitted.) *In re Na-Ki J.*, supra, 222 Conn. App. 12–13. Delaying the matter by continuing the trial for an unspecified amount of time, therefore, "would have placed an unnecessary

burden on the state's interest in providing permanency and stability" to Janeleah. (Internal quotation marks omitted.) Id., 14. Accordingly, the third *Mathews* factor weighs in favor of the petitioner.

In balancing the three *Mathews* factors, we conclude that the respondent has failed to demonstrate that the alleged procedural due process violation exists and that it deprived her of a fair trial. Thus, her claim fails under the third prong of *Golding*.

## II

The respondent next claims that the trial court, in the dispositional phase of the termination of parental rights proceeding, failed to make the requisite written, mandatory findings as to the seven best interest factors set forth in § 17a-112 (k). Specifically, the respondent argues that the court failed to make any written findings regarding the factor set forth in § 17a-112 (k) (7)[13] and, therefore, that the court's best interest determination must be reversed. In response, the petitioner concedes that the court failed to make explicit findings regarding § 17a-112 (k) (7) but argues that reversal of the best interest determination is not required, pursuant to *In re Nevaeh W.*, 317 Conn. 723, 120 A.3d 1177 (2015), because the court's best interest determination is supported by the evidence. We agree with the respondent.

---

[13] The respondent additionally argues, in her principal appellate brief, that the trial court failed to make written findings regarding the factors set forth in § 17a-112 (k) (3), (4) and (5). In her reply brief, however, the respondent concedes that the court made written findings regarding Janeleah's age, as required by § 17a-112 (k) (5). Furthermore, we agree with the petitioner that, reading the court's memorandum of decision as a whole, the court made at least some written findings concerning the factors set forth in § 17a-112 (k) (3) and (4). In light of our conclusion with respect to the factor set forth in § 17a-112 (k) (7) and our remand for a new dispositional hearing, we need not analyze whether the court's written findings with respect to § 17a-112 (k) (3) and (4) require reversal of the court's best interest determination.

The following legal principles are relevant to our resolution of this claim. "In the dispositional phase of a termination of parental rights hearing, the trial court must determine whether it is established by clear and convincing evidence that the continuation of the respondent's parental rights is not in the best interest of the child. In arriving at this decision, the court is mandated to consider and make written findings regarding seven factors delineated in" § 17a-112 (k). (Internal quotation marks omitted.) *In re Dorrell R.*, 64 Conn. App. 455, 467, 780 A.2d 944 (2001). Section 17a-112 (k) provides in relevant part: "Except in the case where termination of parental rights is based on consent, in determining whether to terminate parental rights under this section, the court shall consider and shall make written findings regarding . . . (7) the extent to which a parent has been prevented from maintaining a meaningful relationship with the child by the unreasonable act or conduct of the other parent of the child, or the unreasonable act of any other person or by the economic circumstances of the parent."

Resolving the respondent's claim requires us to interpret the trial court's judgment. "The interpretation of a trial court's judgment presents a question of law over which our review is plenary. . . . As a general rule, judgments are to be construed in the same fashion as other written instruments. . . . The determinative factor is the intention of the court as gathered from all parts of the judgment. . . . Effect must be given to that which is clearly implied as well as to that which is expressed. . . . The judgment should admit of a consistent construction as a whole . . . without particular portions read in isolation, to discern the parameters of its holding." (Internal quotation marks omitted.) *In re Ryshan N.*, 230 Conn. App. 678, 681–82, 330 A.3d 646, cert. denied, 351 Conn. 922, 333 A.3d 104 (2025). "Furthermore, we read an ambiguous trial court record so

as to support, rather than contradict, its judgment." (Internal quotation marks omitted.) *In re Nevaeh W.*, supra, 317 Conn. 733.

Additionally, "[t]o the extent that the [respondent's] claim requires us to interpret the requirements of § 17a-112 (k), our review is plenary. . . . When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . ." (Citation omitted; internal quotation marks omitted.) Id., 729–30.

In the present case, the trial court titled part of its memorandum of decision "Best Interest Considerations." In this part of the decision, the court listed each of the seven best interest factors enumerated in § 17a-112 (k) but did not include any written findings regarding the factors. The court titled the next part of its memorandum of decision "ADJUDICATORY FINDINGS" (adjudicatory findings section). In the adjudicatory findings section, the court made sixteen written findings. Four of those findings explicitly refer to the

"best interest of Janeleah." The court's sixteenth finding, in particular, provides: "It is in the best interest of Janeleah for the parental rights of [the respondent] . . . to be terminated." Although the court refers to this part of its decision as *adjudicatory* findings, it is the only part in which the court explicitly found facts, and the court related those findings to both the statutory ground for termination and the best interest of Janeleah. Accordingly, we read the adjudicatory findings section as containing the court's factual findings for both the adjudicatory phase and the dispositional phase of its decision.

Additionally, the trial court titled an earlier part of its memorandum of decision "EVIDENCE PRESENTED" (evidence presented section). In the evidence presented section, the court described portions of the testimony and exhibits presented at trial. Although the court did not explicitly make credibility determinations or find facts in this section, we read the evidence presented section as setting forth the evidence that the court credited and relied on in making the findings in the adjudicatory findings section.[14] This reading of the decision is

_____

[14] We note that, in the trial court's memorandum of decision, the evidence presented section primarily recounts testimony and exhibits without clearly identifying which portions of the evidence the court found to be credible or persuasive and, in the adjudicatory findings section, the court lists a series of conclusory statements without an explicit narrative linking those conclusions to the evidence or resolving contested issues of fact. The trial court did not use best practices in structuring its memorandum of decision this way. The court was the sole fact finder in this case, and "[i]t is the quintessential function of the fact finder to reject or accept certain evidence, and to believe or disbelieve any expert testimony. . . . The trier may accept or reject, in whole or in part, the testimony of an expert offered by one party or the other." (Internal quotation marks omitted.) *In re Davonta V.*, 285 Conn. 483, 489, 940 A.2d 733 (2008). We, therefore, take this opportunity to emphasize that, under well established appellate standards, an appellate court reviews findings of fact for clear error and does not reweigh evidence or make its own credibility determinations. As such, it is essential that the trial court set forth its factual findings with clarity, distinguishing between a summary of the evidence presented and the court's own determinations of what occurred.

supported by the opening paragraph of the adjudicatory findings section, which provides: "The court has carefully considered the verified petitions and exhibits . . . as well as the testimony presented, according to the standards required by law. Based upon the evidence submitted by the department, the court finds the following by clear and convincing evidence . . . ." The adjudicatory findings section, therefore, must be read in conjunction with the evidence presented section. We now consider whether, reading the decision as a whole, the trial court did consider and make written findings regarding the factor set forth in § 17a-112 (k) (7).

Section 17a-112 (k) (7) requires the trial court to make written findings concerning the extent to which the unreasonable conduct of another person or the economic circumstances of the respondent prevented the respondent from maintaining a meaningful relationship with Janeleah. The petitioner concedes that "[t]he trial court did not expressly make this finding." The petitioner argues, however, that the court "made factual findings that otherwise support the finding that [the respondent was] not prevented from maintaining a meaningful relationship with Janeleah." Specifically, the petitioner points to the portion of the adjudicatory findings section in which the court found that "[t]he department has provided both parents with regular visitation." Although this finding demonstrates that the

A mere recital of testimony, even if extensive, does not satisfy the trial court's obligation to make factual findings, particularly in juvenile matters where the court serves as the finder of fact on critical issues of adjudication. When the evidence is conflicting or when credibility is at issue, the court must make express findings indicating what it believes. This is especially important in juvenile proceedings, where the stakes are significant and appellate review must be tethered to discernible, reviewable findings. Accordingly, to facilitate appellate review of its decision, a trial court, in making written factual findings, should refrain from reciting portions of testimony or referencing other evidence presented without indicating whether it credited that evidence.

department had made efforts to reunite the respondent with Janeleah by offering visitation, nowhere in the court's decision does it state whether the department, the father, or any other person engaged in unreasonable conduct that hindered the respondent's ability to maintain a relationship with Janeleah. Nor does the court's decision state whether the respondent's economic circumstances hindered that ability. No findings of fact indicate that the court considered the extent to which the unreasonable conduct of another person or the economic circumstances of the respondent prevented her from maintaining a meaningful relationship with Janeleah. Thus, the court failed to make the written findings mandated by § 17a-112 (k) (7).

The petitioner nevertheless maintains that reversal of the judgment terminating the respondent's parental rights is not warranted because the trial court's best interest determination is "otherwise factually and legally sound." The petitioner relies on *In re Eden F.*, 250 Conn. 674, 741 A.2d 873 (1999), and *In re Nevaeh W.*, supra, 317 Conn. 740, for the proposition that a trial court's failure to make written findings regarding one of the seven best interest factors set forth in § 17a-112 (k) does not require reversal of the judgment if the court's best interest determination survives "a harmless error review" in light of the evidence presented. We disagree with the petitioner's interpretation of and reliance on the language of our Supreme Court in *In re Nevaeh W.*, supra, 740.

In *In re Eden F.*, our Supreme Court addressed the respondent mother's claim that General Statutes (Rev. to 1999) § 17a-112 (d),[15] which set forth the seven best interest factors, required the petitioner to "prove, by

---

[15] "[S]ubsection (d) of § 17a-112 was redesignated as subsection (k) in 2000. See Public Acts 2000, No. 00-137, § 1." *In re Nevaeh W.*, 317 Conn. 739 n.10.

clear and convincing evidence, that reasonable efforts were made to reunify [the respondent] with her children." *In re Eden F.*, supra, 250 Conn. 687. In rejecting the respondent's claim, the court determined that the statute did not require the trial court to find by clear and convincing evidence that the department's reunification efforts were *reasonable*. See id., 694–95. It stated: "Although [General Statutes (Rev. to 1999)] § 17a-112 (d) (1) and (2) mandated that the trial court make written findings regarding the timeliness, nature, extent and reasonableness of the efforts made to reunify parent and child, [at the time that the petitions were filed] § 17a-112 contained nothing to indicate that any such finding was a prerequisite to the termination of parental rights.[16] Thus, when the petitions in this case were filed, the factors to be considered under § 17a-112 (d) served only to guide the trial court in making its ultimate decision whether to grant the termination petition. . . . [T]he fact that the legislature [had interpolated] objective guidelines into the open-ended fact-oriented statutes which govern [parental termination] disputes . . . should not be construed as a predetermined weighing of evidence . . . by the legislature. Where . . . the record reveals that the trial court's ultimate conclusions [regarding termination of parental rights] are supported by clear and convincing evidence, we will not reach an opposite conclusion on the basis of any one *segment* of the many factors considered in a termination proceeding . . . ." (Citations omitted; emphasis added; footnote added; internal quotation marks omitted.) Id.,

---

[16] "When the petitions in [*In re Eden F.*] were filed, § 17a-112 (d) required that the trial court, in determining whether to terminate parental rights, 'consider and . . . make written findings regarding' seven separate factors, including: '(1) [t]he timeliness, nature and extent of services offered or provided to the parent and the child by an agency to facilitate the reunion of the child with the parent; [and] (2) whether the department . . . has made reasonable efforts to reunite the family pursuant to the federal [Adoption Assistance and] Child Welfare Act of 1980, as amended . . . .' " *In re Eden F.*, supra, 250 Conn. 689–90.

690–91. Our Supreme Court concluded: "Under [General Statutes (Rev. to 1999) § 17a-112 (d)], the trial court was required to *consider* the efforts the department made to reunify [the respondent with her children], and to *make written findings* regarding those efforts, and *the trial court did so*. For petitions filed before the effective date of the 1995 amendment [to § 17a-112 in No. 95-238, § 3, of the 1995 Public Acts], however, the commissioner was not required to establish the *reasonableness* of those efforts." (Emphasis altered.) Id., 694–95.

Later, in *In re Nevaeh W.*, our Supreme Court addressed a claim by the respondent mother that the trial court had failed to comply with § 17a-112 (k) (4) because it made written findings as to the children's relationship with their foster parents rather than with the respondent. See *In re Nevaeh W.*, supra, 317 Conn. 728, 730. In rejecting this claim, our Supreme Court stated: "The plain language of § 17a-112 (k) (4) directs the trial court to consider the children's emotional ties with a long list of people in determining whether the termination of the respondent's parental rights is in their best interest. Nothing in that statute, however, required the trial court to consider only the children's emotional ties with the respondent. . . . Therefore, it was appropriate for the trial court to consider the children's emotional ties to the preadoptive foster family in considering whether termination of the respondent's parental rights was in the children's best interest." Id., 731. The court further stated: "Furthermore . . . [r]eading the trial court's memorandum of decision . . . as a whole, we conclude that the trial court did consider the factor set forth in § 17a-112 (k) (4), including the children's emotional ties to the respondent. Specifically, the trial court explained at the beginning of the memorandum that [the child had been removed from the respondent's custody three times before being

placed in a preadoptive foster home, where she had been placed for more than one year]. These findings by the trial court demonstrate that the trial court did consider the children's relationship with the respondent." (Citation omitted.) Id., 733–34.

Our Supreme Court, after concluding that the trial court had properly made written findings pursuant to § 17a-112 (k) (4), stated: "Although we have not had the occasion to explicitly address whether a trial court is obligated to make explicit written findings as to each *aspect* of the seven factors enumerated in § 17a-112 (k) since *In re Eden F.*, we take the opportunity to do so herein. . . . [A]s this court has previously explained, [t]he balancing of interests in a case involving termination of parental rights is a delicate task and, when supporting evidence is not lacking, the trial court's ultimate determination as to a child's best interest is entitled to the utmost deference. . . . Accordingly, we reaffirm our holding in *In re Eden F.* that, although a trial court shall consider and make written findings regarding the factors enumerated in § 17a-112 (k), a trial court's determination of the best interests of a child will not be overturned on the basis of one factor if that determination is otherwise factually supported and legally sound." (Citations omitted; emphasis added; internal quotation marks omitted.) Id., 739–40.

In the present case, the petitioner asserts that "*In re Nevaeh W.* and *In re Eden F.* require affirming [the judgment terminating the respondent's parental rights] here because the trial court's best interest finding is factually supported and legally sound." The petitioner relies on the language in *In re Nevaeh W.* that states: "[A] trial court's determination of the best interests of a child will not be overturned on the basis of one factor if that determination is otherwise factually supported and legally sound." *In re Nevaeh W.*, supra, 317 Conn. 740. Contrary to the petitioner's assertion, however,

our Supreme Court has never held that a best interest determination may be upheld when a trial court fails to make *any* written findings regarding one of the seven best interest factors set forth in § 17a-112 (k). *In re Nevaeh W.* instructs that "a trial court *shall consider and make written findings* regarding the factors enumerated in § 17a-112 (k)" but, to the extent that a trial court fails to make written findings concerning "each *aspect* of the seven factors," a reviewing court should not reverse the trial court's best interest determination if that determination is "otherwise factually supported and legally sound." (Emphasis added.) Id., 739–40. Furthermore, *In re Nevaeh W.* reaffirmed *In re Eden F.*, which similarly stated that a reviewing court should not reverse a trial court's best interest determination "on the basis of any one *segment* of the [best interest] factors . . . ." (Emphasis added; internal quotation marks omitted.) *In re Eden F.*, supra, 250 Conn. 691. The court's decisions in these cases seem to apply to circumstances in which a trial court makes at least *some* written findings with respect to each factor set forth in § 17a-112 (k) but such findings are insufficient to address all considerations listed within each of the seven factors. We do not read the court's decisions to mean that we should decline to reverse a trial court's best interest determination in a case in which the trial court fails to make *any* written findings with respect to one or more of the best interest factors.

Moreover, the present case is distinguishable from *In re Nevaeh W.* and *In re Eden F.* In those cases, the respondents had challenged the trial courts' written findings regarding certain best interest factors, and our Supreme Court concluded that the trial courts had made sufficient written findings to demonstrate that they considered the factors at issue. See *In re Nevaeh W.*, supra, 317 Conn. 733–34 (holding that trial court's written findings demonstrated consideration of children's relationship with respondent pursuant to § 17a-112 (k) (4)); *In*

*re Eden F.*, supra, 250 Conn. 695 (holding that trial court satisfied 1999 revision of § 17a-112 (k) by making written findings concerning department's efforts to reunify respondent with children). In the present case, however, the trial court did not make *any* written findings to demonstrate that it considered whether the unreasonable conduct of another person or the economic circumstances of the respondent prevented her from maintaining a meaningful relationship with Janeleah. Thus, we cannot conclude that the trial court satisfied the requirements of § 17a-112 (k) (7).

To uphold the trial court's best interest determination in the complete absence of written findings concerning one of the statutory factors would contradict the plain language of § 17a-112 (k), which provides in relevant part that "the court . . . *shall make written findings* regarding" each of the seven factors. (Emphasis added.) The legislature's use of the word "shall" indicates that the written findings are mandatory. See *1st Alliance Lending, LLC* v. *Dept. of Banking*, 342 Conn. 273, 282, 269 A.3d 764 (2022) ("use of the word shall generally evidences an intent that the statute be interpreted as mandatory" (internal quotation marks omitted)); *Silver* v. *Holtman*, 149 Conn. App. 239, 252–53, 90 A.3d 203 ("[a]bsent an indication to the contrary, the legislature's choice of the mandatory term *shall* rather than the permissive term *may* indicates that the legislative directive is mandatory" (emphasis added; internal quotation marks omitted)), cert. denied, 312 Conn. 904, 91 A.3d 906 (2014). Indeed, this court has previously stated that trial courts are "mandated" to make written findings concerning the seven best interest factors; *In re Dorrell R.*, supra, 64 Conn. App. 467 (applying 1999 revision of § 17a-112 (k)); and *In re Navaeh W.* does not analyze whether § 17a-112 (k) is mandatory or directory. See *In re Nevaeh W.*, supra, 317 Conn. 731 (noting that court

has characterized written findings pursuant to § 17a-112 (k) as "mandatory statutory requirement" but not discussing issue further (internal quotation marks omitted)). "[W]hen a statute sets forth a mandatory requirement in plain and unambiguous terms . . . we are not free to ignore patent violations of that requirement under the banner of substantial compliance. To do so would be to substitute our judgment for that of the legislature and to determine that certain statutes are not important enough to demand compliance." *Airey* v. *Feliciano*, 350 Conn. 162, 180, 323 A.3d 1037 (2024). More importantly, "[b]ecause a respondent's fundamental right to parent his or her child is at stake, [t]he statutory criteria [set forth in § 17a-112] must be strictly complied with before termination can be accomplished and adoption proceedings begun." (Internal quotation marks omitted.) *In re J. D.*, 232 Conn. App. 714, 723 n.12,    A.3d   , cert. denied, 352 Conn. 942,    A.3d    (2025). We, therefore, conclude that the court's failure to make any discernible written findings regarding the factor set forth in § 17a-112 (k) (7) requires reversal of the court's best interest determination.

The judgment terminating the respondent's parental rights is reversed only with respect to the trial court's dispositional determination that termination of the respondent's parental rights was in the minor child's best interest and the case is remanded for a new dispositional hearing at which the trial court must make written findings as to all factors set forth in § 17a-112 (k) to determine if termination of the respondent's parental rights is in the minor child's best interest; the trial court's determination as to the adjudication phase of the respondent's termination of parental rights trial is affirmed.

In this opinion the other judges concurred.